## STATE OF CONNECTICUT *v.* WARREN R. PATTERSON
### (15289)

Peters, C. J., and Borden, Berdon, Norcott and Katz, Js.

 

Argued November 29, 1995—decision released April 2, 1996

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *Eugene Callahan*, state's attorney, and *Carol Dreznick*, assistant state's attorney, for the appellant (state).

*Craig A. Raabe*, with whom was *Dina S. Wenger*, for the Connecticut Criminal Defense Lawyers Association as amicus curiae.

NORCOTT, J. The dispositive issue in this certified appeal is whether, after having been tried and convicted of a felony, the defendant, Warren R. Patterson, has a constitutional right to a presentence investigation report (PSI) prior to being sentenced.[1] The Appellate

[1] Sentencing courts are instructed to order a PSI in certain circumstances. General Statutes § 54-91a provides in relevant part: "(a) No defendant convicted of a crime, other than a capital felony, the punishment for which may include imprisonment for more than one year, may be sentenced, or his case otherwise disposed of, until a written report of investigation by a probation officer has been presented to and considered by the court, if (1) the defendant is so convicted for the first time in this state or (2) his record, as shown by the prosecuting official, discloses a conviction obtained prior to five years from the finding of guilty in the present prosecution; but any court may, in its discretion, order a presentence investigation for a defendant convicted of any crime or offense other than a capital felony.

"(b) A defendant who is convicted of a crime and is not eligible for sentence review pursuant to section 51-195 may, with the consent of the sentencing judge and the prosecuting official, waive the presentence investigation."

Practice Book § 910 (a) provides: "If the defendant is convicted of a crime other than a capital felony, the punishment for which may include imprisonment for more than one year, the judicial authority shall order a presentence investigation, or the supplementation of any existing presentence investigation report. The judicial authority may, in his discretion, order a presentence investigation for a defendant convicted of any crime or offense.

"A defendant who is convicted of a crime and is not eligible for sentence review pursuant to Gen. Stat., § 51-195 may, with the consent of the sentenc-

Court held that the trial court violated the defendant's constitutional right to due process because it had failed to order a PSI. *State* v. *Patterson*, 37 Conn. App. 801, 819–20, 658 A.2d 121 (1995). We granted the state's petition for certification to appeal from the judgment of the Appellate Court.[2] We conclude that a criminal defendant does not have a federal constitutional right to a PSI and, accordingly, we reverse the judgment of the Appellate Court.

After an extended procedural history, this case is now before us for the second time. See *State* v. *Patterson*, 230 Conn. 385, 645 A.2d 535 (1994). The defendant was charged with possession of marijuana in violation of General Statutes § 21a-279 (c),[3] possession of marijuana with intent to sell in violation of General Statutes § 21a-277 (b),[4] and violation of probation, to

ing judge and the prosecuting authority, waive the presentence investigation."

[2] We granted the state's petition for certification limited to the following questions: (1) "Whether criminal defendants have a federal constitutional right to a presentence investigation report at sentencing?" (2) "Whether the defendant waived any right to a presentence investigation report?" and (3) "Whether the defendant suffered harm from the lack of a presentence investigation report?" *State* v. *Patterson*, 234 Conn. 914, 660 A.2d 357 (1995).

[3] General Statutes § 21a-279 (c) provides: "Any person who possesses or has under his control any quantity of any controlled substance other than a narcotic substance, or a hallucinogenic substance other than marijuana or who possesses or has under his control less than four ounces of a cannabis-type substance, except as authorized in this chapter, for a first offense, may be fined not more than one thousand dollars or be imprisoned not more than one year, or be both fined and imprisoned; and for a subsequent offense, may be fined not more than three thousand dollars or be imprisoned not more than five years, or be both fined and imprisoned."

[4] General Statutes § 21a-277 (b) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with intent to sell or dispense, possesses with intent to sell or dispense, offers, gives or administers to another person any controlled substance, except a narcotic substance, or a hallucinogenic substance other than marijuana, except as authorized in this chapter, may, for the first offense, be fined not more than twenty-five thousand dollars or be imprisoned not more than seven years or be both fined and imprisoned; and, for each subsequent offense, may be

which he earlier had been sentenced based on a separate conviction also involving the sale of narcotics. After a jury trial, he was acquitted of the first charge and convicted of the second, and the trial court rendered a judgment of conviction and a judgment of revocation of probation. The defendant appealed from the judgments of conviction and revocation of probation to the Appellate Court, which reversed the judgments. *State* v. *Patterson*, 31 Conn. App. 278, 624 A.2d 1146 (1993). Thereafter, the state petitioned for certification to appeal from the judgment of the Appellate Court. We granted the petition limited to the issue of whether the judge in a criminal trial must be present in the courtroom during the entire jury voir dire. *State* v. *Patterson*, 227 Conn. 901, 630 A.2d 72 (1993). We reversed the judgment of the Appellate Court and remanded the case to that court for consideration of the defendant's remaining claims. *State* v. *Patterson*, supra, 230 Conn. 386–87.

On remand, the defendant claimed that the trial court improperly had failed to follow procedural rules, including Practice Book § 910, in sentencing him.[5] *State* v. *Patterson*, supra, 37 Conn. App. 803, 815. The Appellate Court agreed, and held that the trial court had violated the defendant's federal constitutional right to due process because it had failed to order a PSI. Id., 821.

Relying on the fact that a criminal defendant is entitled to due process during the sentencing stage, which

fined not more than one hundred thousand dollars or be imprisoned not more than fifteen years, or be both fined and imprisoned."

[5] Before the Appellate Court, the state argued that the defendant had not preserved any of his claims of procedural error because he had neither raised them at trial nor claimed to be entitled to prevail pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or the plain error doctrine. *State* v. *Patterson*, supra, 37 Conn. App. 816–17. The defendant argued that he had preserved his claim regarding the lack of a PSI by filing a motion to vacate the sentence. Id., 817. The Appellate Court assumed, without deciding, that the defendant had preserved his claim that the trial

includes the right to effective assistance of counsel and the right not to be sentenced based on improper factors or erroneous information, and on the fact that a PSI is the principal method of furnishing information to the trial court during the sentencing stage, the Appellate Court concluded that a PSI is necessary to a meaningful right to counsel and, therefore, is required to secure the defendant's right to due process at sentencing. Id., 819–20.

The state petitioned for and was granted certification to appeal from the judgment of the Appellate Court. See footnote 2. While the petition was pending, the defendant's counsel moved for permission to withdraw his appearance, because the defendant had fled the jurisdiction and his whereabouts were unknown. Subsequently, because of the substantial public interest at stake, we granted a motion filed by the Connecticut Criminal Defense Lawyers Association to appear as amicus curiae on behalf of the defendant and to file an amicus brief. We thereupon granted defense counsel's motion to withdraw.

The following facts are undisputed. "Immediately following the verdict, the trial court excused the jury and stated its intention to impose a sentence at that time. The defendant's counsel made an oral motion for a one week continuance 'for the defendant to get certain affairs in order' and in order 'to file motions.' Shortly after the court denied this motion, counsel reiterated his request asserting, 'I'm going to ask again for a short continuance. If not a week, Your Honor, then a day or two so the defendant can get his life in order prior to being incarcerated.' " Id., 817. Prior to imposing a sentence, however, the court asked defense counsel if he would like to be "heard on [the] sentencing." In

court improperly had failed to order a PSI in violation of Practice Book § 910. Id.

response, in addition to his request for a short continuance, defense counsel requested leniency, noting that the defendant had several children for whom he cared, that there were no victims in this case, that no one was injured and that the quantity of narcotics involved in the conviction was small. Thereafter, the court sentenced the defendant to five years for the present conviction and eighteen months for the probation violation, to be served consecutively.

On appeal, the state claims that the Appellate Court improperly concluded that the defendant has a constitutional right to a PSI under the due process clause of the fourteenth amendment to the United States constitution.[6] In that connection, the state argues that (1) the defendant's right to due process at sentencing does not include the right to a PSI, and (2) although a liberty interest may arise from state statutes and court rules, the defendant cannot prevail under this theory in light of the recent United States Supreme Court decision in *Sandin* v. *Conner*, U.S. , 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995), in which the court set forth the proper analysis for determining when such liberty interests arise.[7] In the alternative, the state claims that even if

_____

[6] The Appellate Court declined to address the same claim under the state constitution. " 'Due process claims under the federal and state constitutions can be treated together because they impose similar constitutional limitations. *Keogh* v. *Bridgeport*, 187 Conn. 53, 59–60, 444 A.2d 225 (1982). The defendant offers no argument for separate treatment of his state constitutional claim. Accordingly, we will consider only his federal constitutional claim. *State* v. *Mercer*, 208 Conn. 52, 67 n.9, 544 A.2d 611 (1988).' *State* v. *Flanders*, 214 Conn. 493, 500 n.4, 572 A.2d 983, cert. denied, 498 U.S. 901, 111 S. Ct. 260, 112 L. Ed. 2d 217 (1990)." *State* v. *Patterson*, supra, 37 Conn. App. 818 n.15.

[7] The Appellate Court's decision was based solely on the defendant's liberty interest at sentencing. The amicus argues, however, in what is essentially an alternative ground for affirmance, that Practice Book § 910 creates a constitutionally protected liberty interest in a PSI, where one did not otherwise exist. Furthermore, the amicus contends that even if we were to conclude that the defendant has a liberty interest in a PSI, in the present case, he was deprived of that interest without due process of law. See

we were to hold that the defendant has a constitutional right to a PSI, he waived that right when defense counsel failed to object to the trial court's failure to order a PSI during the sentencing stage. Finally, the state claims that even if we were to hold that the defendant did not waive his right to a PSI, any error was harmless because the trial court, in determining the appropriate sentence, had before it virtually all of the information that would have been provided by a PSI. We agree with the state that the defendant does not have a constitutional right to a PSI and reverse the judgment of the Appellate Court.[8]

"The fourteenth amendment provides, in part, 'nor shall any State deprive any person of life, liberty or property, without due process of law . . . .' The interest at stake in the present proceeding is [the defendant's] liberty interest. There are two elements which must be established in order to find a due process violation. First, because not every liberty interest is protected, [the defendant] must establish that he has a liberty interest that comes within the ambit of the fourteenth amendment. *Hewitt* v. *Helms*, 459 U.S. 460, 466, 103 S. Ct. 864, 74 L. Ed. 2d 675 (1983); *Meachum* v. *Fano*, 427 U.S. 215, 223–24, 96 S. Ct. 2532, 49 L. Ed. 2d 451, reh. denied, 429 U.S. 873, 97 S. Ct. 191, 50 L. Ed. 2d 155 (1976); *Board of Regents* v. *Roth*, 408 U.S. 564, 571, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972); *Society for Savings* v. *Chestnut Estates, Inc.*, 176 Conn. 563, 571, 409 A.2d 1020 (1979). If it is determined that a protected liberty is implicated, then the second element

*Mathews* v. *Eldridge*, 424 U.S. 319, 334–35, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). Because we conclude that the defendant does not have a protected liberty interest in a PSI, we need not determine what due process rights would have resulted had such a liberty interest been found to exist. See *Asherman* v. *Meachum*, 213 Conn. 38, 46, 566 A.2d 663 (1989).

[8] Because we conclude that the defendant does not have a constitutional right to a PSI, we need not address the state's remaining claims, which assume the existence of that right.

that must be addressed is what procedural protections are 'due.' *Goss* v. *Lopez*, 419 U.S. 565, 577, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975); *Board of Regents* v. *Roth*, supra, 569–70; *Morrissey* v. *Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972); see *Williams* v. *Bartlett*, 189 Conn. 471, 477, 457 A.2d 290 (1983)." *State* v. *Davis*, 190 Conn. 327, 336–37, 461 A.2d 947, cert. denied, 464 U.S. 938, 104 S. Ct. 350, 78 L. Ed. 2d 315 (1983).

Due process analysis begins with the identification of the interests at stake. "Liberty interests protected by the Fourteenth Amendment may arise from two sources—the Due Process Clause itself and the laws of the States." (Internal quotation marks omitted.) *State* v. *Campbell*, 224 Conn. 168, 182, 617 A.2d 889 (1992), cert. denied, 508 U.S. 919, 113 S. Ct. 2365, 124 L. Ed. 2d 271 (1993). The amicus claims that there are two liberty interests of which the defendant has been deprived without due process of law: (1) his liberty interest in the sentencing process; and (2) his liberty interest in a PSI that arises from Practice Book § 910. Our analysis, therefore, is bifurcated.

I

The state contends that the Appellate Court's conclusion that the defendant's right to due process at sentencing includes the right to a PSI is not supported by the traditional due process balancing test. See *Mathews* v. *Eldridge*, 424 U.S. 319, 348–49, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). We agree.[9]

---

[9] Even if we were to conclude that the defendant's right to due process at sentencing includes the right to a PSI, that right could not be limited to convicted noncapital felons as dictated by Practice Book § 910. Cf. *Sandin* v. *Conner*, supra, 115 S. Ct. 2303 (Ginsburg, J., dissenting). Because the Appellate Court's decision was rooted in the defendant's right to counsel at sentencing, the due process rights emanating therefrom necessarily would have to extend to all criminal proceedings to which the right to counsel attaches, which include prosecutions for any crime, including a misdemeanor, for which the penalty may involve the loss of liberty. See *Argersinger* v. *Hamlin*, 407 U.S. 25, 37, 92 S. Ct. 2006, 32 L. Ed. 2d 530 (1972).

It is undisputed that the defendant possesses a liberty interest that is implicated during the sentencing process. In the present case, the Appellate Court based its decision on this interest and the due process rights emanating therefrom. "[I]t is now clear that the sentencing process, as well as the trial itself, must satisfy the requirements of the Due Process Clause. Even though the defendant has no substantive right to a particular sentence within the range authorized by statute, the sentencing is a critical stage of the criminal proceeding at which he is entitled to the effective assistance of counsel. . . . The defendant has a legitimate interest in the character of the procedure which leads to the imposition of sentence even if he may have no right to object to a particular result of the sentencing process." (Citation omitted.) *Gardner* v. *Florida*, 430 U.S. 349, 358, 97 S. Ct. 1197, 51 L. Ed. 2d 393 (1977). "Although a criminal defendant is entitled to due process of law at sentencing . . . the range of due process rights in sentencing procedures is not as extensive as that at trial. *Williams* v. *New York*, 337 U.S. 241, 246–47, 69 S. Ct. 1079, 93 L. Ed. 1337, reh. denied, 337 U.S. 961, 69 S. Ct. 1529, 93 L. Ed. 1760 (1949); *United States* v. *Adams*, 694 F.2d 200, 202–203 (9th Cir. 1982) [cert. denied, 462 U.S. 1118, 103 S. Ct. 3085, 77 L. Ed. 2d 1347 (1983)]; *State* v. *Thompson*, 197 Conn. 67, 77, 495 A.2d 1054 (1985)." (Internal quotation marks omitted.) *State* v. *Patterson*, supra, 37 Conn. App. 818–19.

" 'Generally, due process does not require that information considered by the trial judge prior to sentencing meet the same high procedural standard as evidence introduced at trial. Rather, judges may consider a wide variety of information. . . .' *United States* v. *Robelo*, 596 F.2d 868, 870 (9th Cir. 1979). Consistent with due process the trial court may consider responsible unsworn or out-of-court information relative to the circumstances of the crime and to the convicted person's

life and circumstance. *Williams* v. *Oklahoma*, 358 U.S. 576, 584, 79 S. Ct. 421, 3 L. Ed. 2d 516 (1959). It is a fundamental sentencing principle that a sentencing judge may 'appropriately conduct an inquiry broad in scope, and largely unlimited either as to the kind of information he may consider or the source from which it may come.' *United States* v. *Tucker*, 404 U.S. 443, 446, 92 S. Ct. 589, 30 L. Ed. 2d 592 (1972). The trial court's discretion, however, is not completely unfettered. As a matter of due process, information may be considered as a basis for a sentence only if it has some minimal indicium of reliability. *United States* v. *Baylin*, 696 F.2d 1030, 1040 (3d Cir. 1982). As long as the sentencing judge has a reasonable, persuasive basis for relying on the information which he uses to fashion his ultimate sentence, an appellate court should not interfere with his discretion. See *United States* v. *Campbell*, 684 F.2d 141, 154 (D.C. Cir. 1982); *United States* v. *Robelo*, supra [870]." *State* v. *Huey*, 199 Conn. 121, 127, 505 A.2d 1242 (1986). Although a "defendant is entitled to counsel at sentencing hearings and may not be sentenced on the basis of improper factors or erroneous information . . . the due process clauses of the state and federal constitutions do not in all circumstances require a judge to hold hearings and give a convicted person an opportunity to participate in those hearings when determining the sentence to be imposed." (Citations omitted; internal quotation marks omitted.) *State* v. *Thompson*, supra, 197 Conn. 77–78.

"Due process analysis requires balancing the government's interest in existing procedures against the risk of erroneous deprivation of a private interest inherent in those procedures. *Pet* v. *Department of Health Services*, 207 Conn. 346, 364, 542 A.2d 672 (1988). All that is necessary is that the procedures be tailored, in light of the decision to be made, to the capacities and circumstances of those who are to be heard . . . to insure

that they are given a meaningful opportunity to present their case. Id., quoting *Mathews* v. *Eldridge*, [supra, 424 U.S. 348–49]. Under this analysis, the court must consider three factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Pet* v. *Department of Health Services*, supra, [364,] quoting *Mathews* v. *Eldridge*, supra, 335." (Internal quotation marks omitted.) *Chmielewski* v. *Aetna Casualty & Surety Co.*, 218 Conn. 646, 661–62, 591 A.2d 101 (1991).

Applying this analysis to the present case, we conclude that the defendant's right to due process at sentencing does not include the right to a PSI.[10] First, the defendant possesses an obvious interest in receiving the shortest possible sentence. The court's provision of, or failure to provide, a PSI will affect this interest, although its effect will vary depending on whether the information in the PSI is favorable or unfavorable to the defendant. The amicus argues that the defendant also has an interest in fair and accurate sentencing, as

---

[10] We have found no other jurisdiction in which a court has concluded that a criminal defendant has a federal constitutional right to a PSI during the sentencing stage. On the contrary, numerous courts have held that the defendant does not have a constitutional right to a PSI. See, e.g., *Katz* v. *King*, 627 F.2d 568, 576 (1st Cir. 1980) (failure to use PSI is not of constitutional dimensions); *Howard* v. *Maggio*, 540 F.2d 1280, 1282 (5th Cir. 1976) (PSI is aid to counsel, not right of accused); *Segura* v. *Patterson*, 402 F.2d 249, 252 (10th Cir. 1968), rev'd on other grounds, 403 U.S. 946, 91 S. Ct. 2280, 29 L. Ed. 2d 856 (1971) (right to PSI has not risen to dignity of constitutional requirement); *Elswick* v. *Holland*, 623 F. Sup. 498, 502 (S.D. W. Va. 1985), dismissed, 782 F.2d 1034 (4th Cir. 1986) (no constitutional right to PSI); *Lawson* v. *Riddle*, 401 F. Sup. 410, 412 (W.D. Va. 1975) (no constitutional right to PSI).

well as long-term collateral interests, which may be impacted by a PSI or the lack thereof. As the state correctly notes, however, if, as a result of a PSI, a court were likely to impose a sentence, which while fair and accurate nonetheless exceeds the sentence that it would otherwise impose, then it is clearly in the defendant's interest that the PSI not be generated. The effect that a PSI will have on the defendant's long-term interests depends on the particular circumstances and would tip the scale in favor of requiring a PSI only to the extent that it is favorable to the defendant. We conclude, therefore, that the first element of the due process balancing test is essentially neutral.

The second element of the test involves consideration of the risks arising from the lack of a PSI and the probable value associated with providing a PSI. The primary risk associated with the lack of a PSI is the possibility that the sentence imposed will be based on unreliable and insufficient information. This risk is substantially minimized, however, by other constitutional safeguards. For example, a criminal defendant has a constitutional right to the effective assistance of counsel during the sentencing stage and a constitutional right not to be sentenced on the basis of improper factors or erroneous information. See *State* v. *Thompson*, supra, 197 Conn. 77–78. Presumably, effective defense counsel will present to the court all relevant mitigating material consistent with the defendant's best interests and will ensure that all information presented to the court by the state meets the standards of reliability and relevance applicable during sentencing.[11] Indeed, in holding that there is a constitutional right to counsel at sentencing, the United States Supreme Court stated that "the necessity for the aid of counsel in mar-

---

[11] In the present case, when asked if he would like to be heard on the sentence, defense counsel requested leniency, citing numerous mitigating factors.

shaling the facts, introducing evidence of mitigating circumstances and in general aiding and assisting the defendant to present his case as to sentence is apparent." *Mempa* v. *Rhay*, 389 U.S. 128, 135, 88 S. Ct. 254, 19 L. Ed. 2d 336 (1967). Similarly, the state, represented by the state's attorney, has an interest in presenting accurate aggravating material, which it can present to the court irrespective of the presence of a PSI. Thus, the presence of both counsel—for the defendant, and for the state—serves as an additional safeguard against the risk of a sentence imposed on the basis of unreliable and inaccurate information.

We do not belittle the potential benefits of providing a PSI at sentencing.[12] The "sole purpose [of a PSI] is to enable the court, within limits fixed by statute, to impose an appropriate penalty, fitting the offender as well as the crime."[13] *State* v. *Gullette*, 3 Conn. Cir. Ct. 153, 167, 209 A.2d 529 (1964). The primary value of a

[12] The state concedes that a PSI may be an important factor in achieving a particularized sentence in some cases. The value of a PSI in achieving a fair and accurate sentence, however, is not a foregone conclusion. See P. Pope, "How Unreliable Factfinding Can Undermine Sentencing Guidelines," 25 Yale L.J. 1258, 1275 (1986) (PSI often omits information, contains erroneous information or is slanted to favor state). Even if we were to assume that the use of a PSI may lead to the optimal results at sentencing, that does not, by itself, make it the constitutionally required floor of due process.

[13] Relying on *Pennsylvania ex rel. Sullivan* v. *Ashe*, 302 U.S. 51, 55, 58 S. Ct. 59, 82 L. Ed. 43 (1937), the amicus contends that a PSI is necessary because a sentencing judge is required, in the interest of individualized sentencing, to consider more than " 'the particular acts by which the crime was committed.' " In *Ashe*, the United States Supreme Court stated that "[f]or the determination of sentences, justice *generally* requires consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances of the offense together with the character and propensities of the offender. His past may be taken to indicate his present purposes and tendencies and significantly to suggest the period of restraint and the kind of discipline that ought to be imposed upon him." (Emphasis added.) Id. Whether a court is constitutionally required to take into account certain factors when imposing a sentence, however, is a different question from whether a defendant has a constitutional right to a PSI.

PSI stems from the information contained therein, not from the report itself.[14] Most of this information can be brought to the trial court's attention by either party by means other than a PSI. In fact, in the present case, without the aid of a PSI, the trial court had knowledge of the circumstances of the offense because: (1) the trial had just been completed; (2) the court had access to a PSI from the prior year, which was generated in connection with a separate charge and contained information regarding the defendant's criminal record and social history; and (3) the court was presented with information by defense counsel regarding the defendant's present condition. Moreover, because the crime involved was the sale of narcotics, there was no identifiable victim to interview. All of this information was available to the trial court and could have been supplemented by either party.

The amicus argues that a PSI is one of the few safeguards available to a defendant to decrease the risk of unfairness at sentencing arising out of the court's broad discretion and the informal procedural rules applicable during the sentencing stage. Courts, however, are afforded equally broad discretion in imposing a sentence when a PSI has been provided, the contents of which are governed by equally informal evidentiary rules. See *State* v. *Harmon*, 147 Conn. 125, 128, 157 A.2d 594 (1960). Thus, we are not persuaded that mandating the availability of a PSI as a constitutional prerequisite to a valid sentence will abate these concerns.

Finally, we consider the third element of the balancing test, namely, the governmental interests affected.

---

[14] The contents of a PSI are prescribed by Practice Book § 911, which provides in relevant part: "Whenever an investigation is required . . . the probation officer shall promptly inquire into the attitude of the complainant or the victim, or of the immediate family where possible in cases of homicide, and the criminal record, social history and present condition of the defendant . . . [including] the circumstances of the offense and any damages suffered by the victim . . . ."

It is undisputed that the government has an interest in fair and accurate sentencing, which, arguably, is served by ordering a PSI. See footnote 12. In the absence of a PSI, however, this interest can be adequately protected by both parties, whose own interests will provide an incentive to present all information that they consider relevant to a fair and accurate sentence. Conversely, the state would bear a substantial burden if required, as a matter of due process, to provide all convicted defendants with a PSI. The amicus argues that, as a practical matter, the increased burden on the government would be minimal because a PSI is routinely ordered unless waived by the defendant. Presently, however, a PSI is not required for all convicted criminals. See footnote 1. Thus, to require the government to provide a PSI for all defendants convicted of crimes for which the penalty may involve a loss of liberty would significantly increase its burden. We conclude, therefore, that the due process clause does not require that all criminal defendants be provided with a PSI at sentencing.

## II

In addition to the liberty interest inherently at stake during sentencing, the amicus claims that the defendant has a special liberty interest in a PSI created by Practice Book § 910. Relying on *Hewitt* v. *Helms*, supra, 459 U.S. 472, the amicus argues that § 910, by virtue of its mandatory language, gives rise to a protected liberty interest in a PSI. We disagree.

In *Hewitt* v. *Helms*, supra, 459 U.S. 471–72, the United States Supreme Court held that while there is not an inherent constitutionally protected liberty interest in remaining free from administrative segregation while incarcerated, a state can create such an interest through prison regulations, which explicitly require the satisfaction of certain substantive predicates prior to the use

of administrative segregation and, as a result, remove discretion from official decision making in that area. The United States Supreme Court, however, recently has clarified the federal constitutional approach to determining when a state created liberty interest arises, where one does not otherwise exist. See *Sandin* v. *Conner*, supra, 115 S. Ct. 2300 n.5; see also *Mitchell* v. *Dupnik*, 67 F.3d 216, 221 (9th Cir. 1995) ("[United States] Supreme Court has since adopted a new approach to determining when prison regulations create a liberty interest"). Our analysis, therefore, is controlled by *Sandin*.[15]

In *Sandin* v. *Conner*, supra, 115 S. Ct. 2295, the defendant had been incarcerated at a maximum security prison. During a strip search he became abusive to prison officials and, as a result, was charged with misconduct. Id., 2296. After a hearing before an adjustment committee, he was found guilty and sentenced to disciplinary segregation. Id. Subsequently the defendant

---

[15] In its brief the amicus relied solely on the *Hewitt* test and offered no analysis of its claim under *Sandin*. At oral argument, however, the amicus attempted to distinguish *Sandin* as the United States Supreme Court's response to the federal courts' inundation with habeas corpus actions from prisoners who have searched prison regulations for mandatory language without regard to the deprivation involved. We disagree. Although the court in *Sandin* addressed these concerns, it emphatically criticized and abandoned the *Hewitt* approach on which the amicus relies, and did not limit its modification of the *Hewitt* analysis to prison regulation cases, as suggested by the amicus. *Sandin* v. *Conner*, supra, 115 S. Ct. 2300 n.5. Indeed, the United States Supreme Court has applied the *Sandin-Hewitt* analysis only within the context of prisoner claims; cf. id., 2300 (interests will be generally limited to freedom from restraint); *Hewitt* v. *Helms*, supra, 459 U.S. 472 (confinement to administrative segregation); *Greenholtz* v. *Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979) (denial of parole); *Wolff* v. *McDonnell*, 418 U.S. 539, 557, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974) (revoking good time credits that reduced sentence); and thus has not decided whether it is also properly applied during the sentencing process. We assume, without deciding, that the *Sandin-Hewitt* analysis will apply in the sentencing context and, therefore, that a statute or rule containing mandatory language, such as Practice Book § 910, may give rise to a protected liberty interest during the sentencing process that otherwise would not exist.

sought administrative review of the committee's decision and brought suit in the United States District Court, claiming that he had been deprived of his liberty interest in remaining free from administrative segregation without procedural due process because he was not allowed to present witnesses at the hearing. Id. The District Court granted the prison officials' motion for summary judgment and the defendant appealed to the United States Court of Appeals for the Ninth Circuit. See *Conner* v. *Sakai,* 15 F.3d 1463 (9th Cir. 1993). The Court of Appeals reversed the judgment of the District Court, concluding that a prison regulation requiring officials to find guilt when a charge of misconduct is supported by substantial evidence created a nondiscretionary duty that, by negative implication, also required that they not find guilt unless a charge is supported by substantial evidence.[16] *Sandin* v. *Conner,* supra, 2296–97. Relying on *Wolff* v. *McDonnell,* 418 U.S. 539, 557, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974), and its progeny, the Court of Appeals held that this nondiscretionary duty created a liberty interest, of which the defendant could not be deprived without due process.[17] *Sandin* v. *Conner,* supra, 2296–97.

Upon review by the United States Supreme Court, however, that court held that the defendant's segregation was not the type of deprivation in which a state might conceivably create a liberty interest, and reversed the judgment of the Court of Appeals. Id., 2301. The United States Supreme Court began its analysis by sum-

---

[16] A finding of guilt was punishable by disciplinary segregation. *Sandin* v. *Conner,* supra, 115 S. Ct. 2296 n.1.

[17] In *Wolff* v. *McDonnell,* supra, 418 U.S. 558, the United States Supreme Court had concluded that prisoners do not have an inherent liberty interest in a good time credit scheme, but once the prison establishes regulations that provide that prisoners can lose good time credits only if they are guilty of serious misconduct, "the determination of whether such behavior has occurred becomes critical, and the minimum requirements of procedural due process appropriate for the circumstances must be observed."

marizing and criticizing the attenuated development of the *Hewitt* approach. "Shortly after *Meachum* [v. *Fano*, supra, 427 U.S. 226–27], the Court embarked on a different approach to defining state-created liberty interests. Because dictum in *Meachum* distinguished *Wolff* by focusing on whether state action was mandatory or discretionary, the Court in later cases laid ever greater emphasis on this somewhat mechanical dichotomy. *Greenholtz* v. *Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979), foreshadowed the methodology that would come to full fruition in *Hewitt* v. *Helms*, [supra, 459 U.S. 460]. . . . The Court made explicit in *Hewitt* what was implicit in *Greenholtz*. . . . Instead of looking to whether the State created an interest of real substance comparable to the good time credit scheme of *Wolff*, the Court asked whether the State had gone beyond issuing mere procedural guidelines and had used language of an unmistakably mandatory character such that the incursion on liberty would not occur absent specified substantive predicates. Id., [471–72]. Finding such mandatory directives in the regulations before it, the Court decided that the State had created a protected liberty interest. . . . As this methodology took hold, no longer did inmates need to rely on a showing that they had suffered a grievous loss of liberty retained even after sentenced to terms of imprisonment. . . . For the Court had ceased to examine the nature of the interest with respect to interests allegedly created by the State. . . . By shifting the focus of the liberty interest inquiry to one based on the language of a particular regulation, and not the nature of the deprivation, the Court encouraged prisoners to comb regulations in search of mandatory language on which to base entitlements to various state-conferred privileges." (Citations omitted; internal quotation marks omitted.) *Sandin* v. *Conner*, supra, 115 S. Ct. 2298–99.

Following this summary, the court stated that "[i]n light of the above discussion, we believe that the search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause. The time has come to return to the due process principles we believe were correctly established and applied in *Wolff* and *Meachum*. Following *Wolff*, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. See also *Board of Pardons* v. *Allen*, 482 U.S. 369, 107 S. Ct. 2415, 96 L. Ed. 2d 303 (1987). But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." (Citations omitted.)[18] *Sandin* v. *Conner*, supra, 115 S. Ct. 2300. The test in *Hewitt*, which the court characterized as a determination of "whether the State [has] gone beyond issuing mere procedural guidelines and [has] used 'language of an unmistakably mandatory character' such that the incursion on liberty would not occur 'absent specified substantive predicates' "; id., 2298; failed to emphasize the nature of the incursion. Id. For this reason, the court modified the *Hewitt* test to require that the deprivation be of a significant and atypical nature. Id., 2300.

The amicus argues that Practice Book § 910 satisfies the modified *Hewitt* test because it removes the trial court's discretion about whether to order a PSI, and thereby limits official discretion in decision making

---

[18] Liberty interests are generally divided into two categories: (1) the freedom of action without physical restraint; and (2) the freedom of choice and action to engage in certain types of activities, whether constitutionally protected or not. J. Nowak, R. Rotunda & J. Young, Constitutional Law (2d Ed. 1983) p. 533.

affecting a fundamental liberty interest. We disagree. Although § 910 contains mandatory language requiring a court to order a PSI when a person is convicted of a noncapital felony and, therefore, removes the court's discretion with respect to ordering a PSI, it does not confine the court's discretion with respect to the only liberty interest at stake, namely, the defendant's interest in receiving the shortest possible sentence. We conclude, therefore, that § 910 does not create a protected liberty interest in a PSI.

Ordinarily, we would, following our conclusion that the Appellate Court improperly reversed the trial court's judgment, remand the case to the Appellate Court for a determination of the other claims originally raised by the defendant in that court. In this case, however, the defendant has fled the jurisdiction and has, therefore, disentitled himself to the benefit of appellate review of his conviction. See *State* v. *Leslie*, 166 Conn. 393, 394, 349 A.2d 843 (1974); *State* v. *Kennedy*, 13 Conn. App. 576, 578, 538 A.2d 707, cert. denied, 207 Conn. 811, 541 A.2d 1240 (1988).

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion PETERS, C. J., and BORDEN and KATZ, Js., concurred.

BERDON, J., concurring. Although I concur in the result, on the facts of this case, I would not reach the important constitutional issue of whether a criminal defendant has a right to a presentence investigation report at sentencing. Because sentencing is a critical stage of a criminal proceeding; *Gardner* v. *Florida*, 430 U.S. 349, 358, 97 S. Ct. 1197, 51 L. Ed. 2d 393 (1977); a criminal defendant "has a legitimate interest in the character of the procedure which leads to the imposi-

tion of sentence even if he may have no right to object to a particular result of the sentencing process" as long as it is sanctioned by law. Id. It is important, not only from the perspective of the defendant whose liberty is at stake, but also from the vantage point of the state, which represents the public's interest, that the sentencing judge have before him or her all the information regarding the defendant that is necessary to make an informed decision. Additionally, it is important that this information be gathered and evaluated by a professionally trained probation officer who is detached from the advocacy of both the defendant and the state.

Despite the fact that the court's failure to order and consider a presentence investigation report at sentencing was improper, I find it unnecessary to reach the constitutional issue in this case because this error was harmless beyond a reasonable doubt. Not only was the sentencing court well informed as to the circumstances of the defendant's immediate offense because it had presided over the trial itself, but the court also had access to a comprehensive presentence report that was prepared one year earlier concerning the defendant's criminal record and social history. That information, which was relatively current, adequately substituted for the presentence investigation report that the court should have ordered in this case.

Accordingly, I concur in the result.