******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* CHARLES LOGAN
(AC 36605)

Beach, Sheldon and Bear, Js.

*Argued March 17—officially released October 6, 2015*

(Appeal from Superior Court, judicial district of
Hartford, Alexander, J.)

*Charles Logan*, self-represented, the appellant
(defendant).

*Lisa A. Riggione*, senior assistant state's attorney,
with whom, on the brief, were *Gail P. Hardy*, state's
attorney, and *John F. Fahey*, senior assistant state's

attorney, for the appellee (state).

*Opinion*

BEAR, J. The defendant, Charles Logan, appeals from the judgment of the trial court denying his motion to correct an illegal sentence filed pursuant to Practice Book § 43-22. The defendant claims on appeal that his sentence was imposed in an illegal manner because the trial court failed to consider his youth as a mitigating factor at his sentencing, in violation of his right against cruel and unusual punishment under the eighth amendment[1] to the federal constitution.[2] We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. On November 6, 1997, the defendant pleaded guilty under the Alford doctrine[3] to murder in violation of General Statutes §§ 53a-54a (a) and 53a-8, and conspiracy to commit murder in violation of General Statutes §§ 53a-54a (a) and 53a-48. The defendant also admitted that he violated his youthful offender probation in violation of General Statutes § 53a-32.[4] The defendant waived his right to a presentence investigation report[5] and the matter was continued to November 21, 1997, for sentencing.

At the defendant's sentencing, after hearing from both sides and being presented with letters from the victim's family, the court, *Clifford, J.*, stated: "There is nothing I can say, obviously, to ease the family's pain. . . . An example of a young angry kid out there with a gun on the streets, and this is a result of it. The only thing you have going for you in my opinion was that you were [seventeen] years of age when you committed this. You didn't have much of a record. You didn't have much time really to accumulate a record. Really, you are not an adult until you are [sixteen]. . . . [T]here is going to be some light at the end of the tunnel. You are [nineteen] years of age. If you are doing what they are saying on murder cases day for day, you will be [forty-eight] when you get out. That is certainly a long time in my book, but you will be getting up every day, and the victim, obviously, is never going to. . . . I think it is a reasonable sentence. You've got a lot of time to think about what you did . . . . As I say, some day you will get out." In accordance with the defendant's plea agreement, the court imposed a total effective sentence of thirty-one years imprisonment.[6]

On July 10, 2013, the defendant filed a motion to correct an illegal sentence pursuant to Practice Book § 43-22. In essence, the defendant claimed that he was seventeen years old at the time of the offenses, and, thus, he was a minor. He further claimed that the court viewed him as an adult, and that he was prejudiced by that viewpoint throughout the entire criminal process. The defendant sought to be resentenced with his youth considered as a mitigating factor.[7] On October 4, 2013, the court, *Alexander, J.*, conducted a hearing on the

defendant's motion to correct an illegal sentence, and it was at that hearing that the defendant filed an amended motion, in which he further alleged that his due process rights were violated because of the court's reliance on false information.[8]

On January 2, 2014, the court rendered its decision on the defendant's motion. In its memorandum of decision, the court reviewed the recent United States Supreme Court decisions in *Roper* v. *Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005), *Graham* v. *Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010), and *Miller* v. *Alabama*, U.S. , 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), in which it established standards to be applied in the sentencing of juvenile offenders. The trial court also considered this court's opinion in *State* v. *Riley*, 140 Conn. App. 1, 58 A.3d 304 (2013), which the trial court knew to be certified to but not yet decided by our Supreme Court at the time of its decision.[9] The court determined that the defendant had not satisfied his burden of demonstrating that his sentence of thirty-one years had been imposed in an illegal manner and, thus, denied his motion to correct. This appeal followed.

We begin with the relevant standard of review and legal principles. "We review the [trial] court's denial of [a] defendant's motion to correct [an illegal] sentence under the abuse of discretion standard of review. . . . In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did." (Citation omitted; internal quotation marks omitted.) *State* v. *Martin M.*, 143 Conn. App. 140, 144, 70 A.3d 135, cert. denied, 309 Conn. 919, 70 A.3d 41 (2013).

Practice Book § 43-22 provides: "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner." "An illegal sentence is essentially one which either exceeds the relevant statutory maximum limits, violates a defendant's right against double jeopardy, is ambiguous, or is inherently contradictory. . . . Sentences imposed in an illegal manner have been defined as being within the relevant statutory limits but . . . imposed in a way which violates the defendant's right . . . to be addressed personally at sentencing and to speak in mitigation of punishment . . . or his right to be sentenced by a judge relying on accurate information or considerations solely in the record, or his right that the government keep its plea agreement promises . . . ." (Internal quotation marks omitted.) *State* v. *Starks*, 121 Conn. App. 581, 586, 997 A.2d 546 (2010).

The defendant claims that his sentence was imposed in an illegal manner because the trial court incorrectly

referred to him as an adult, and failed to consider his youth as a mitigating factor at sentencing in violation of his rights under the eighth amendment to the United States constitution.[10] He argues that the court incorrectly believed that a sixteen year old is considered an adult and, thus, considered the defendant, who was seventeen years old when he committed the crime, as an adult, despite the fact that the law views both sixteen and seventeen year olds as youth. He argues that the court should have applied *Miller*, and considered his youth and its attendant hallmark features, such as "immaturity, impetuosity, susceptibility to peer pressure, home environment, ability to handle the criminal justice system, and possibility for rehabilitation," at his sentencing.

After the defendant's sentencing, the United States Supreme Court decided a trilogy of cases that fundamentally altered the legal landscape for the sentencing of juvenile offenders.[11] The defendant's claim requires a review of those cases and three cases subsequently decided by the Connecticut Supreme Court, which broadly interpreted the scope of those cases. In *Roper* v. *Simmons*, supra, 543 U.S. 578, the court held that the eighth and fourteenth amendments prohibit the imposition of the death penalty on juvenile offenders. In *Graham* v. *Florida*, supra, 560 U.S. 82, the court held that the eighth amendment prohibits the sentence of life without the possibility of parole for juvenile nonhomicide offenders. Most recently, in *Miller* v. *Alabama*, supra, 132 S. Ct. 2463–64, the court held that the eighth amendment prohibits mandatory sentencing schemes that mandate life in prison without the possibility of parole for juvenile homicide offenders, although a sentence of life imprisonment without the possibility of parole may be deemed appropriate following consideration of the child's age related characteristics and the circumstances of the crime. These federal cases recognized that "[t]he concept of proportionality is central to the Eighth Amendment. Embodied in the Constitution's ban on cruel and unusual punishments is the precept of justice that punishment for crime should be graduated and proportioned to [the] offense." (Internal quotation marks omitted.) *Graham* v. *Florida*, supra, 59; see also *Roper* v. *Simmons*, supra, 560; *Miller* v. *Alabama*, supra, 2463.

In *State* v. *Riley*, 315 Conn. 637, 640, 110 A.3d 1205 (2015), the defendant was seventeen years old when he committed murder and several nonhomicide offenses for which the trial court imposed a total effective sentence of 100 years imprisonment. Our Supreme Court found that the reasoning in *Miller* extended beyond mandatory sentencing schemes to discretionary sentencing schemes where the trial court imposed a sentence for a term of years that was the functional equivalent of a life sentence. The court held that "if a sentencing scheme permits the imposition of [a life

sentence without any possibility of parole] on a juvenile homicide offender, the trial court *must* consider the offender's chronological age and its hallmark features as mitigating against such a severe sentence."[12] (Emphasis in original; internal quotation marks omitted.) Id., 658. Thus, for *Miller* to apply, the sentence must be a literal life sentence without the possibility of parole or the functional equivalent of a life sentence without the possibility of parole.

In the present case, the defendant claims that his sentence was imposed in an illegal manner because the trial court did not apply *Miller* and consider his age and its hallmark features as mitigating factors at his sentencing. To determine whether the trial court abused its discretion in denying the defendant's motion to correct, we must, therefore, determine whether a thirty-one year sentence is the functional equivalent of a life sentence without the possibility of parole and, thus, subject to the sentencing procedures set forth in *Miller*.[13]

General Statutes § 53a-35b provides in relevant part: "A sentence of life imprisonment means a definite sentence of *sixty* years, unless the sentence is life imprisonment without the possibility of release . . . in which case the sentence shall be imprisonment for the remainder of the defendant's natural life." (Emphasis added.) In *Riley*, it was undisputed that the defendant's sentence of 100 years imprisonment was the functional equivalent to a sentence of life imprisonment without the possibility of parole. *State* v. *Riley*, supra, 315 Conn. 642.

In *State* v. *Taylor G.*, 315 Conn. 734, 738, 741, 110 A.3d 338 (2015), the defendant was fourteen and fifteen years old when he committed nonhomicide offenses for which the trial court imposed a total effective sentence of ten years imprisonment followed by three years of special parole.[14] Our Supreme Court concluded that "the ten and five year mandatory minimum sentences [that the defendant would serve concurrently], under which the defendant is likely to be released before he reaches the age of thirty, do not approach what the [United States Supreme Court] described in *Roper*, *Graham* and *Miller* as the two harshest penalties." Id., 745–46. The court reasoned that "[a]lthough the deprivation of liberty for any amount of time, including a single year, is not insignificant, *Roper*, *Graham* and *Miller* cannot be read to mean that all mandatory deprivations of liberty are of potentially constitutional magnitude," and that the defendant "will be able to work toward his rehabilitation and look forward to release at a relatively young age." Id.

Our Supreme Court explained: "[In *Roper*, *Graham* and *Miller*] the court concluded there was a constitutional violation because the sentences consisted of death or life imprisonment without the possibility of

parole, the two most severe punishments courts are able to impose. . . . The difference between these and other sentences is not merely quantitative. There is also a qualitative difference. Death is final and irrevocable, unlike any other sentence. Life in prison without the possibility of parole is also final and irrevocable in the sense that it deprives the offender of all hope of future release and of living a normal life, even if he or she is successfully rehabilitated and capable of returning and making a positive contribution to society. These differences were recognized by the courts in all three cases, each of which described the punishment in question as unique in its severity.'' (Citations omitted.) Id., 745. The court concluded that "[t]he defendant's sentences [in *Taylor G.*] not only were far less severe than the sentences at issue in *Roper*, *Graham* and *Miller*, but were consistent with the principle of proportionality at the heart of the eighth amendment protection . . . .'' Id., 744.

Finally, most recently in *Casiano* v. *Commissioner of Correction*, 317 Conn. 52, 55,     A.3d     (2015), the petitioner was sixteen years old when he committed homicide and nonhomicide offenses for which the trial court imposed a total effective sentence of fifty years imprisonment without the possibility of parole pursuant to a plea agreement. Our Supreme Court determined that *Miller* applies retroactively to cases arising on collateral review, and that a fifty year sentence without the possibility of parole was the functional equivalent of life imprisonment without the possibility of parole and, therefore, subject to the sentencing procedures set forth in *Miller*.[15] Id., 79. The court observed that because the petitioner would be released from prison at the age of sixty-six and the average life expectancy of a male in the United States is seventy-six years, he would only have approximately ten more years to live outside of prison after his release. Id, 76. The court explained that "[a] juvenile is typically put behind bars before he has had the chance to exercise the rights and responsibilities of adulthood, such as establishing a career, marrying, raising a family, or voting. Even assuming the juvenile offender does live to be released, after a half century of incarceration, he will have irreparably lost the opportunity to engage meaningfully in many of these activities and will be left with seriously diminished prospects of his quality of life for the few years he has left." Id., 77. The court concluded that "a fifty year term and its grim prospects for any future outside of prison effectively provide a juvenile offender with no chance for fulfillment outside prison walls, no chance for reconciliation with society, no hope." (Internal quotation marks omitted.) Id., 79.

Turning to the present case, we conclude that the trial court did not abuse its discretion in denying the defendant's motion to correct an illegal sentence, because in the circumstances of the defendant at the

time of" sentencing, a thirty-one year sentence was not the functional equivalent of life imprisonment without the possibility of parole, and thus, the court did not have to apply *Miller* prior to accepting his plea and sentencing him. The present case is analogous to *Taylor G.*, in that the defendant's thirty-one year sentence, under which he will be released before he reaches the age of fifty, does not approach what the United States Supreme Court described in *Roper*, *Graham*, and *Miller* as the two harshest penalties. Like the defendant in *Taylor G.*, the defendant in the present case, even if he is not paroled,[16] will be able to work toward rehabilitation, and can look forward to release at an age when he will still have the opportunity to live a meaningful life outside of prison and to become a productive member of society. "Although the deprivation of liberty for any amount of time, including a single year, is not insignificant, *Roper*, *Graham* and *Miller* cannot be read to mean that all mandatory deprivations of liberty are of potentially constitutional magnitude." *State* v. *Taylor G.*, supra, 315 Conn. 745–46. Thus, the trial court properly determined that the defendant's sentence was not imposed in an illegal manner and did not abuse its discretion in denying the defendant's motion to correct an illegal sentence.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Although the defendant did not state that his claim was raised under the fourteenth amendment, we recognize that "[t]he cruel and unusual punishments clause of the eighth amendment is made applicable to the states through the due process clause of the fourteenth amendment." *State* v. *Taylor G.*, 315 Conn. 734, 737 n.4, 741, 110 A.3d 338 (2015). For the purpose of this opinion, we refer to the defendant's claim as an eighth amendment claim.

[2] The defendant attempts to raise two additional claims in this appeal. The first claim, found in his appellate brief, is that the police violated his fourth amendment rights against unlawful search and seizure by entering his grandfather's house without consent and arresting him without an arrest warrant. This claim cannot properly be raised in a motion to correct an illegal sentence filed pursuant to Practice Book § 43-22. "It is well settled that [t]he purpose of [Practice Book] § 43-22 is not to attack the validity of a conviction by setting it aside but, rather to correct an illegal sentence or disposition . . . . Thus, [i]n order for the [trial] court to have jurisdiction over a motion to correct an illegal sentence after the sentence has been executed, the sentencing proceeding, and not the [proceedings] leading to the conviction, must be the subject of the attack." (Citation omitted; internal quotation marks omitted.) *State* v. *Cruz*, 155 Conn. App. 644, 651, 110 A.3d 527 (2015). We do not review this claim as it raises issues concerning the defendant's underlying conviction, and it does not raise any issues concerning the legality of his sentence or the sentencing proceeding.

The second additional claim that the defendant attempts to raise is that the court improperly denied his request for the appointment of counsel. We do not consider this claim as it was raised for the first time in the defendant's reply brief. See *State* v. *Houghtaling*, 155 Conn. App. 794, 797 n.2, 111 A.3d 931 (2015) ("[i]t is well established . . . that [an appellate] court will not review claims that are raised for the first time in a reply brief" [internal quotation marks omitted]).

[3] "A criminal defendant who enters a guilty plea under the *Alford* doctrine does not admit guilt but acknowledges that the state has sufficient evidence to convict." *State* v. *Fairchild*, 155 Conn. App. 196, 199 n.2, 108 A.3d 1162, cert. denied, 316 Conn. 902, 111 A.3d 470 (2015); see *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970) ("[a]n individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to

admit his participation in the acts constituting the crime").

[4] The defendant waived his right to confidentiality as to the youthful offender matter.

[5] We note that to the extent that the defendant attempts to argue that the court somehow violated his due process rights by failing to consider the contents of a presentence investigation report (report), a criminal defendant does not have a constitutional right to a report. See *State* v. *Patterson*, 236 Conn. 561, 568, 674 A.2d 416 (1996). The report is a statutory right, which may be waived. See General Statutes § 54-91a (b). In the present case, the defendant waived his right to a report.

[6] The court sentenced the defendant to concurrent terms of thirty-one years imprisonment on the murder charge, twenty years imprisonment on the conspiracy to commit murder charge, and six years imprisonment on the violation of probation charge. The defendant received a total effective sentence of thirty-one years imprisonment. The defendant's total potential maximum exposure on the three charges, however, was eighty-six years imprisonment. Additionally, as part of the disposition, the state entered nolles in docket number CR95-0475835, in which the defendant was charged with two counts of possession of less than four ounces of marijuana and failure to appear in the second degree.

[7] In his motion to correct an illegal sentence, the defendant admitted that he had agreed to the sentence: "The defendant expected to receive an offer of 29 years but it was taken off of the table once defendant hesitated in taking the offer. [The defendant] had selected seven jury members before finally taking the 31 years."

[8] At the hearing, the court noted that a representative from the Office of the Public Defender had interviewed the defendant previously pursuant to *State* v. *Casiano*, 282 Conn. 614, 922 A.2d 1065 (2007), and determined that there was no basis for the appointment of counsel. The court, however, appointed a standby attorney "not pursuant to *Casiano* appointment" to provide the defendant with any information he may have needed at the hearing.

[9] On March 10, 2015, our Supreme Court rendered its decision in *State* v. *Riley*, 315 Conn. 637, 110 A.3d 1205 (2015), reversing the decision of this court affirming the trial court's 100 year sentence, and setting out specific standards to be applied in the sentencing of a juvenile. The court concluded: "*Miller* does not stand solely for the proposition that the eighth amendment demands that the sentencer have discretion to impose a lesser punishment than life without parole on a juvenile homicide offender. Rather, *Miller* logically indicates that, if a sentencing scheme permits the imposition of that punishment on a juvenile homicide offender, the trial court *must* consider the offender's chronological age and its hallmark features as mitigating against such a severe sentence. . . . As the court in *Miller* explained, those features include: immaturity, impetuosity, and failure to appreciate risks and consequences; the offender's family and home environment and the offender's inability to extricate himself from that environment; the circumstances of the homicide offense, including the extent of [the offender's] participation in the conduct and the way familial and peer pressures may have affected him; the offender's inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys; and the possibility of rehabilitation . . . ." (Citation omitted; emphasis in original; internal quotation marks omitted.) Id., 658.

[10] The eighth amendment to the United States constitution, made applicable to the states by the fourteenth amendment, provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

[11] The term juvenile offender is used in this opinion to refer to a person who committed one or more crimes when he or she was younger than eighteen years of age. See *State* v. *Riley*, supra, 315 Conn. 640 n.1.

[12] Those features include: "immaturity, impetuosity, and failure to appreciate risks and consequences; the offender's family and home environment and the offender's inability to extricate himself from that environment; the circumstances of the homicide offense, including the extent of [the offender's] participation in the conduct and the way familial and peer pressures may have affected him; the offender's inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys; and the possibility of rehabilitation . . . ." (Internal quotation marks omitted.) *State* v. *Riley*, supra, 315 Conn. 658.

[13] Our Supreme Court did not answer this question in *Casiano* v. *Commissioner of Correction*, 317 Conn. 52, 79, A.3d (2015) ("[w]e need not

decide in the present case whether the imposition of a term of less than fifty years imprisonment without parole on a juvenile offender would require the procedures set forth in *Miller*, or whether other characteristics might bear on a juvenile offender's life expectancy" [footnote omitted]).

[14] "The court . . . sentenced the defendant to the mandatory minimum of ten years incarceration on the first degree sexual assault count followed by three years of special parole, one year incarceration on the fourth degree sexual assault count, and ten years incarceration, five of which were mandatory, on the risk of injury count. The court ordered that the latter two sentences be served concurrently with the first, for a total effective sentence of ten years incarceration followed by three years of special parole." *State* v. *Taylor G.*, supra, 315 Conn. 741.

[15] Although *Miller* can apply to a sentence imposed pursuant to a plea agreement, the sentence must still be a literal life sentence without the possibility of parole or the functional equivalent of a life sentence without the possibility of parole. See *Casiano* v. *Commissioner of Correction*, supra, 317 Conn. 73 n.14; *State* v. *Riley*, supra, 315 Conn. 658.

[16] Recent legislation will afford the opportunity of parole to individuals, including the defendant, who committed crimes as juveniles, providing further encouragement for their efforts at rehabilitation. Number 15-84, § 1 (f) of the 2015 Public Acts, effective October 1, 2015, provides in relevant part: "Notwithstanding the provisions of subsections (a) to (e), inclusive, of this section, a person convicted of one or more crimes committed while such person was under eighteen years of age, who is incarcerated on or after October 1, 2015, and who received a definite sentence or total effective sentence of more than ten years for such crime or crimes prior to, on or after October 1, 2015, may be allowed to go at large on parole in the discretion of the panel of the Board of Pardons and Paroles for the institution in which such person is confined, provided (A) if such person is serving a sentence of fifty years or less, such person shall be eligible for parole after serving sixty per cent of the sentence or twelve years, whichever is greater . . . ."

———————————————