## STATE OF CONNECTICUT v. ALBERT RUPAR
## (SC 18269)

Rogers, C. J., and Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued April 23—officially released September 22, 2009

*Richard W. Callahan*, special public defender, for the plaintiff in error.

*Harry Weller*, senior assistant state's attorney, with whom, on the brief, were *Margaret Gaffney Radionovas*, senior assistant state's attorney, *Matthew C. Gedansky*, state's attorney, and *Elizabeth C. Leaming*, assistant state's attorney, for the defendant in error.

*Opinion*

ZARELLA, J. The dispositive issue raised by this writ of error is whether convicted persons have a liberty interest under the fourteenth amendment to the United States constitution[1] in receiving prison sentences that are proportional to the prison sentences of similarly situated offenders. We conclude that there is no such liberty interest under the fourteenth amendment and, accordingly, dismiss the writ of error.

The record reveals the following facts and procedural history. On November 19, 2002, the plaintiff in error, Albert Rupar (plaintiff), was charged in a substitute information with sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), sexual assault in the fourth degree in violation of General Statutes (Rev. to 2001) § 53a-73a (a) (1) (A), and risk of injury to a child in violation of General Statutes (Rev. to 2001) § 53-21 (a) (2). Following a jury trial, the plaintiff was acquitted of sexual assault in the first degree and convicted of sexual assault in the fourth degree and risk of injury to a child. On February 21, 2003, the trial court sentenced the plaintiff to a total effective term of eleven years imprisonment, execution sus-

---

[1] Section 1 of the fourteenth amendment to the United States constitution provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

pended after seven years, and twenty years probation with special conditions.[2] The plaintiff also was ordered to register as a sex offender for ten years.

On appeal, the Appellate Court affirmed the plaintiff's conviction.[3] *State* v. *Rupar*, 86 Conn. App. 641, 657, 862 A.2d 352 (2004), cert. denied, 273 Conn. 919, 871 A.2d 1030 (2005). In doing so, the Appellate Court summarized the facts underlying the charges that the state had filed against the plaintiff as follows: "On July 14, 2001, the [plaintiff] attended a party at the seven year old victim's home.[4] The [plaintiff], along with several other adults in attendance at the party, gave rides to children on his all-terrain vehicle around the seven acre property. The victim rode with the [plaintiff] a number of times throughout the evening, sometimes sitting on the back of the vehicle, behind the [plaintiff], and sometimes sitting toward the front of the vehicle, between the [plaintiff's] legs. Every time the victim rode with the [plaintiff], except for the first time, the [plaintiff], using his left hand, touched her vagina both over and under her clothes. On the final ride, the [plaintiff] inserted his finger into her vagina. The [plaintiff] warned [the victim] not to tell anyone what had happened.

"Despite the [plaintiff's] warning, the victim immediately told her mother that [the plaintiff] had 'hugged

[2] Specifically, the trial court sentenced the plaintiff to consecutive sentences of one year imprisonment, execution suspended after six months, for sexual assault in the fourth degree, and ten years imprisonment, execution suspended after six and one-half years, and twenty years probation, for risk of injury to a child.

[3] The plaintiff claimed on direct appeal that the assistant state's attorney had committed various improprieties during trial that resulted in a denial of his right to a fair trial. See *State* v. *Rupar*, 86 Conn. App. 641, 642, 862 A.2d 352 (2004), cert. denied, 273 Conn. 919, 871 A.2d 1030 (2005).

[4] In accordance with our policy of protecting the privacy interests of victims of sexual abuse, we decline to identify the victim or others through whom her identity may be ascertained. See General Statutes § 54-86e.

her privates.' After her mother questioned her, the victim then revealed that the [plaintiff] had touched her both over and under her clothes, and that the [plaintiff] had inserted his finger into her vagina. The victim's mother consulted with the victim's father, and the two called the police. Shortly thereafter, the police arrived at the victim's home. The victim was brought to the police station and interviewed. . . . [O]n July 15, 2001, the state police arrested the [plaintiff] at his home." Id., 642–43.

On March 14, 2003, following the plaintiff's conviction and sentencing, the plaintiff filed an application for sentence review with the sentence review division of the Superior Court (review division). The review division held a hearing on November 22, 2005. At the hearing, the plaintiff's counsel argued that the plaintiff had been sentenced as if he had been convicted of sexual assault in the first degree, a crime of which he had been acquitted. The plaintiff's counsel further argued that the plaintiff's sentence should be adjusted downward because it was disproportionately excessive in comparison to the sentences of other, similarly situated offenders.[5] In support of his argument, the plaintiff's counsel presented more than 110 pages of data that he had collected from the judicial branch regarding the sentences of similarly situated offenders. The defendant in error (state) responded that each offender's sentence must be addressed individually, on the basis of its unique facts, and that the facts in the plaintiff's case demonstrated that his sentence was appropriate. Specifically, the state argued that the plaintiff's failure to take responsibility for his actions,[6] coupled with evi-

---

[5] The plaintiff's counsel also argued that the sentence was inappropriate in light of certain comments that the presiding judge had made during sentencing. The plaintiff did not raise this claim in his direct appeal to the Appellate Court and does not raise this claim in his writ of error.

[6] The plaintiff never assumed responsibility for his actions before trial. At trial, his attorney branded the victim a "liar" and a "brat." After he had been found guilty but before sentencing, the plaintiff continued to shirk

dence of prior, uncharged sexual misconduct, demonstrated that the plaintiff's sentence was appropriate.

On November 22, 2005, following the hearing, the review division upheld the plaintiff's sentence. In its memorandum of decision, the review division stated that it had "reviewed and considered" the "handout of comparative cases" that the plaintiff's counsel had provided and his argument that "the trial court sentenced the [plaintiff] as if he had been convicted [of] . . . sexual assault in the first degree." The review division stated further: "Pursuant to [Practice Book] § 43-23 et seq., the [review division] is limited in the scope of its review. The [review] division is to determine whether the sentence imposed 'should be modified because it is inappropriate or disproportionate in the light of the nature of the offense, the character of the offender, the protection of the public interest, and the deterrent, rehabilitative, isolative, and denunciatory purposes for which the sentence was intended.' [Practice Book § 43-28.]

"The [review] division is without authority to modify a sentence except in accordance with the provisions of [Practice Book] § 43-23 et seq. and [General Statutes] § 51-194 et seq.

"The trial court heard the testimony of the entire trial. The court can consider all the facts when deciding the fair and appropriate sentence. Regardless of the fact [that] the [plaintiff] was found not guilty of sexual assault in the first degree, the court evaluated the facts and testimony before handing down the sentence. The

responsibility by claiming, for the first time, that he was under the influence of marijuana at the time of the sexual assault. Although the plaintiff eventually admitted in the presentence investigation report that "something did happen," he nevertheless maintained that he was not completely clear as to what did occur. He further qualified his admission by stating that the victim's vagina must have "jumped into [his] hand . . . ." Finally, he maintained that he did not realize that what he had done was wrong.

trial court heard the testimony of the victim and found her to be credible.

"In reviewing the record as a whole, the [review] division finds that the sentencing court's actions were in accordance with the parameters of [Practice Book] § 43-23 et seq.

"The sentence imposed was neither inappropriate [nor] disproportionate."

On February 15, 2006, following the filing of the review division's decision, the plaintiff filed a motion with the review division seeking reconsideration of its decision and a new evidentiary hearing at which "[he] may put on evidence of underlying facts in other cases to support [his] claim that the sentence he received was disproportionate." The plaintiff claims that this motion was denied.[7] Thereafter, the plaintiff filed a writ of error, which is now before this court.[8]

In support of his writ of error, the plaintiff claims that (1) convicted persons have a liberty interest under the fourteenth amendment to the United States constitution in receiving a sentence that is proportional to the sentences of similarly situated offenders, (2) the review division improperly concluded that his sentence was not disproportionate and improperly declined to reduce his sentence, and (3) he was denied procedural due process as guaranteed under the fourteenth amendment to the United States constitution upon asserting his claimed liberty interest. The state responds that the writ of error should be dismissed because convicted

---

[7] The court's files do not indicate whether the review division acted on this motion; however, counsel has represented to this court in the plaintiff's brief that the motion was denied.

[8] This writ of error originally was filed with this court on May 18, 2007. Pursuant to General Statutes § 51-199 and Practice Book § 65-1, we transferred the writ of error to the Appellate Court on June 18, 2007, and subsequently transferred the writ back to this court on November 13, 2008.

persons do not have a liberty interest under the due process clause in sentences that are proportionate to those of similarly situated offenders. The state argues, therefore, that the plaintiff has not been deprived of due process as a matter of law. We agree with the state and dismiss the writ of error.

I

As a threshold matter, we must address this court's authority to consider a writ of error challenging a decision of the review division. The state asserts that the writ of error should be dismissed because General Statutes § 51-196 (d) directs that "[t]he decision of the review division in each case shall be final . . . ." The state's position is that no form of appellate review is available from any determination by the review division. Although we agree that the review division's decision *on the merits* with respect to the propriety of a sentence is unreviewable, either by way of an appeal or through a writ of error; see *State* v. *Nardini*, 187 Conn. 109, 117, 445 A.2d 304 (1982) ("neither the state nor the defendant may appeal from the decision of the sentence review division"); we do not agree that this court is thereby deprived of authority to review certain challenges to the procedures employed by the review division in reaching such a decision.

We begin by noting that, upon the filing of an application for review with the review division, there are three potential outcomes. First, the review division may dismiss an application on jurisdictional or procedural grounds if it is deemed improper under General Statutes § 51-195. Second, the review division may consider the application and uphold the sentence imposed by the sentencing court. Third, the review division may decide to modify the applicant's sentence "and may order such different sentence or sentences to be imposed as could have been imposed at the time of the imposition of the

sentence under review . . . ." General Statutes § 51-196 (a). We will consider the jurisdictional ramifications of each of these outcomes in turn.

In the event that the review division determines that a sentence modification is appropriate, General Statutes § 51-196 (d) provides that "the Superior Court shall resentence the defendant or make any other disposition of the case ordered by the review division." A party seeking to challenge the modified sentence cannot appeal the review division's decision directly but may seek appellate review of the judgment of the court imposing the new sentence by way of a direct appeal pursuant to General Statutes § 54-95 (a) or General Statutes § 54-96.[9] See *State* v. *Nardini*, supra, 187 Conn. 117 (state permitted to appeal, pursuant to § 54-96, from judgment of court imposing new sentence ordered by review division, notwithstanding finality provision of § 51-196 [d]); see also *State* v. *Johnson*, 192 Conn. 471, 475, 472 A.2d 1267 (1984); *State* v. *Heyward*, 152 Conn. 426, 428–30, 207 A.2d 730 (1965). To the extent that a party bringing such an appeal seeks to challenge a sentence falling within statutory limits, however, it is well established that this court lacks jurisdiction to review the sentencing court's or the review division's exercise of discretion in determining an appropriate sentence. See, e.g., *State* v. *Levy*, 103 Conn. 138, 148, 130 A. 96 (1925) ("Since it is conceded that the term of imprisonment was less than the maximum prescribed by statute, and the fine no larger than the statutory maximum, this reason of appeal [challenging the sentence] presents no question of law. It is simply an appeal

---

[9] Section 54-95 authorizes a criminal defendant to appeal whereas § 54-96 authorizes the state to appeal on the granting of permission. The availability of an appeal makes the writ of error an inappropriate vehicle for obtaining appellate review pursuant to Practice Book § 72-1 (b), which provides in relevant part: "No writ of error may be brought in any civil or criminal proceeding for the correction of any error where (1) the error might have been reviewed by process of appeal, or by way of certification . . . ."

for clemency made to a court which has no discretionary jurisdiction in the matter."); see also *State* v. *LaPorta*, 140 Conn. 610, 612, 102 A.2d 885 (1954) (when sentence imposed is within limits for offense charged, this court had "no discretionary power" to modify sentence). "An appellate court *will not review* the proper exercise of a trial court's discretion to fix a sentence [that] is within the statutory limits of the crime for which the defendant is being sentenced." (Emphasis added.) *State* v. *Lopez*, 5 Conn. App. 599, 611, 502 A.2d 418 (1985), cert. denied, 199 Conn. 803, 506 A.2d 146 (1986); see *State* v. *Nardini*, supra, 119.

Indeed, in *Nardini*, this court recognized that one of the original purposes animating the legislature's creation of the review division was to mitigate the potentially harsh or unfair consequences that may arise from the lack of any meaningful appellate review of otherwise legal sentences. We noted that, before the division was established, an "[a]ppeal to this court was . . . fruitless because [as] long as the sentence was within the statutory limits an appeal challenging a sentence as excessive was nothing more than an appeal for clemency and a request that [this court] exercise a discretionary authority that [it did] not possess." *State* v. *Nardini*, supra, 187 Conn. 119. In our view, the portion of § 51-196 (d) providing that "[t]he decision of the review division in each case shall be final" merely serves to reinforce the role of the review division as the final arbiter of discretionary sentencing determinations.

If the review division determines that the sentence under review should stand, no *appeal* of that determination is available because there is no statutory basis for appellate jurisdiction. "It is axiomatic that, except insofar as the constitution bestows upon this court jurisdiction to hear certain cases; see *Fonfara* v. *Reapportionment Commission*, 222 Conn. 166, 610 A.2d 153 (1992); the subject matter jurisdiction of the Appellate

Court and of this court is governed by statute." (Internal quotation marks omitted.) *Conetta* v. *Stamford*, 246 Conn. 281, 289–90, 715 A.2d 756 (1998). General Statutes § 51-196 (a) provides that, after review of the sentence imposed, the review division "may decide that the sentence or commitment under review should stand." This determination is final and cannot be appealed; there is no requirement that the trial court take any further action in such circumstances, and the statute does not provide any mechanism for an appeal.[10] Furthermore, insofar as a writ of error otherwise might be available under these circumstances, a writ of error purporting to challenge the appropriateness of an otherwise legal sentence would suffer from the same problem as an appeal attempting to raise the same challenge and would be dismissed by this court for lack of jurisdiction. See, e.g., *State* v. *Nardini*, supra, 187 Conn. 119.

In the case of the third potential outcome, namely, the review division's refusal to consider an application for review on procedural or jurisdictional grounds, our case law suggests that a writ of error is an appropriate vehicle for seeking review of such a decision. In *Staples* v. *Palten*, 214 Conn. 195, 196–97, 571 A.2d 97 (1990), this court considered a writ of error in which the plaintiff in error, Jules Staples, claimed that the review division incorrectly had concluded that it lacked jurisdiction to consider his application for review of his sentence because he had entered into a "plea agreement" within the meaning of § 51-195. General Statutes § 51-195 provides in relevant part: "Any person sentenced . . . to a term of imprisonment for which the total sentence . . . amounts to confinement for three years or more,

---

[10] The statutes providing general jurisdiction over appeals from final judgments of the Superior Court; see General Statutes § 51-197a (appeals to Appellate Court); General Statutes § 51-199 (appeals to Supreme Court); are inapplicable to this situation because, as we previously have discussed, there is no Superior Court judgment from which to appeal, other than the judgment imposing the original sentence.

may, within thirty days from the date such sentence
was imposed . . . except . . . in any case in which
the sentence or commitment imposed resulted from the
court's acceptance of a plea agreement . . . file . . .
an application for review of the sentence by the review
division. . . ." Although the issue of jurisdiction appar-
ently was not raised, it is instructive that we considered
the writ of error in *Staples* notwithstanding the directive
of General Statutes (Rev. to 1989) § 51-196 that "[t]he
decision of the review division in each case shall be
final . . . ."

We conclude that the "decision[s] of the review divi-
sion" referred to in § 51-196 (d) are those determina-
tions on the merits with respect to whether a sentence
should be modified and, if so, in what way. A determina-
tion by the review division regarding its jurisdiction to
consider an application for review is a question of law
rather than an exercise of discretion and is not other-
wise appealable. Thus, this court has jurisdiction to
consider a writ of error challenging the review division's
determination that it lacks statutory authority to review
a particular sentence.[11]

We also have considered an appeal from the trial
court's imposition of a modified sentence that had been
ordered by the review division. In *State* v. *Johnson*,
supra, 192 Conn. 475, we considered the state's appeal
from the downward modification of a sentence that
was based solely on the review division's "disapproval
of making a sentence for conspiracy to commit a crime
run consecutive[ly] to a sentence for the commission
of the crime itself." (Internal quotation marks omitted.)
We agreed with the state that the sentence modification
was an abuse of the review division's discretion "not

---

[11] We note that the issue of whether this court could exercise jurisdiction
to consider a challenge made by the state to the review division's determina-
tion that it *has* jurisdiction over a particular application for review is not
before us.

because of the actual result reached by the . . . review division but because of the method by which that result was reached." Id., 476. We concluded that the review division completely ignored the review criteria set forth in the predecessor to Practice Book § 43-28, choosing instead to apply "its blanket policy rule without regard to the facts of [the] particular case." Id., 477. On the basis of the review division's procedural failure to apply the requisite factors in considering the sentence under review, we concluded that "the modification of sentence by the review division was an abuse of discretion and therefore illegal." Id., 479.

*Johnson* is illuminating in that it demonstrates that appellate review of the review division's modification of a sentence may be available only when the claimed impropriety does not implicate the modified sentence itself but, rather, the process employed to arrive at that sentence. Cf. *State* v. *Nardini,* supra, 187 Conn. 117 (allowing state to appeal from resentencing of defendant on basis of review division's downward modification of original sentence when basis of appeal was alleged unconstitutionality of sentence review statutory scheme); *State* v. *Heyward,* supra, 152 Conn. 429–30 (allowing defendant to appeal from resentencing on basis of review division's decision to increase defendant's sentence when defendant claimed that increase in sentence resulted in violation of his due process and double jeopardy rights). The only substantive difference between *Johnson* and the present case is the procedural posture of the two cases. *Johnson* involved an *appeal* from the final judgment of the trial court incorporating the modified sentence. In the present case, however, there is no such judgment because the sentence review division simply upheld the original sentence.

We conclude that the writ of error is appropriate under the circumstances of the present case and that we have jurisdiction to consider the writ on its merits.

We first conclude that the review division's decision to uphold the original sentence represents a final judgment of the review division that is not otherwise appealable. See General Statutes § 51-196 (d). Thus, we further conclude that a writ of error is authorized under the present circumstances by the provisions of Practice Book § 72-1 (a) (4).[12] Finally, because the plaintiff is not challenging the *result* that the review division reached but, rather, challenging, under the United States constitution, the adequacy of the *procedures* that the review division employed to reach that result, we conclude that we have jurisdiction to consider the merits of the plaintiff's writ of error.

## II

We begin with the applicable legal principles, which are found in the fourteenth amendment to the United States constitution. Section 1 of the fourteenth amendment provides in relevant part that "[n]o State shall . . . deprive any person of life, liberty or property, without due process of law . . . ." "The interest at stake in the present [case] is [the plaintiff's] liberty interest. There are two elements [that] must be established in order to find a due process violation. First, because not every liberty interest is protected, [the plaintiff] must

---

[12] Practice Book § 72-1 (a) provides in relevant part: "Writs of error for errors in matters of law only may be brought from a final judgment of the superior court to the supreme court in the following cases . . . (4) as otherwise necessary or appropriate in aid of its jurisdiction and agreeable to the usages and principles of law."

There is no question that the issue presented in this case with respect to whether the review division provided adequate procedures under the fourteenth amendment to the United States constitution is a question of law. Furthermore, we have no difficulty characterizing the review division's decision to uphold the plaintiff's original sentence as a "final judgment of the [S]uperior [C]ourt" from which a writ of error may be taken within the meaning of Practice Book § 72-1 (a). See *Staples* v. *Palten*, supra, 214 Conn. 197 (reviewing writ of error challenging review division's dismissal of application for review on ground that it lacked jurisdiction to entertain application).

establish that he has a liberty interest that comes within the ambit of the fourteenth amendment. *Hewitt* v. *Helms*, 459 U.S. 460, 466, 103 S. Ct. 864, 74 L. Ed. 2d 675 (1983); *Meachum* v. *Fano*, [427 U.S. 215, 223–24, 96 S. Ct. 2532, 49 L. Ed. 2d 451] (1976); *Board of Regents* v. *Roth*, 408 U.S. 564, 571, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972); *Society for Savings* v. *Chestnut Estates, Inc.*, 176 Conn. 563, 571, 409 A.2d 1020 (1979). If it is determined that a protected liberty is implicated, then the second element that must be addressed is what procedural protections are due. *Goss* v. *Lopez*, 419 U.S. 565, 577, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975); *Board of Regents* v. *Roth*, supra, 569–70; *Morrissey* v. *Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972); see *Williams* v. *Bartlett*, 189 Conn. 471, 477, 457 A.2d 290 (1983). . . .

"Due process analysis begins with the identification of the interests at stake. Liberty interests protected by the [f]ourteenth [a]mendment may arise from two sources—the [d]ue [p]rocess [c]lause itself and the laws of the [s]tates." (Citation omitted; internal quotation marks omitted.) *State* v. *Patterson*, 236 Conn. 561, 568–69, 674 A.2d 416 (1996). Accordingly, we first consider whether the plaintiff has a constitutionally protected liberty interest in a sentence that is proportional to that of similarly situated offenders under the fourteenth amendment and then address whether such a liberty interest arises under the laws of this state.

A

The plaintiff first claims that convicted persons have a liberty interest, under the due process clause of the fourteenth amendment, in receiving sentences that are proportionate to the sentences of similarly situated offenders.[13] We disagree.

---

[13] We note that, in oral argument before this court, counsel for the plaintiff conceded that the fourteenth amendment, by itself, does not create a liberty interest in a proportionate sentence. We nevertheless analyze this claim, which the plaintiff has presented in his brief to this court, in order to address

A liberty interest protected by the fourteenth amendment's due process clause "may arise from the [c]onstitution itself, by reason of guarantees implicit in the word 'liberty,' see, e.g., *Vitek* v. *Jones*, 445 U.S. 480, [493–94, 100 S. Ct. 1254, 63 L. Ed. 2d 552] (1980) (liberty interest in avoiding involuntary psychiatric treatment and transfer to mental institution) . . . ." (Citation omitted.) *Wilkinson* v. *Austin*, 545 U.S. 209, 221, 125 S. Ct. 2384, 162 L. Ed. 2d 174 (2005). This court has construed such guarantees to include a liberty interest in the sentencing process. *State* v. *Patterson*, supra, 236 Conn. 570 ("[i]t is undisputed that [a] defendant possesses a liberty interest that is implicated during the sentencing process"). We have defined this liberty interest narrowly, however, stating that, "[a]lthough a criminal defendant is entitled to due process of law at sentencing . . . the range of due process rights in sentencing procedures is not as extensive as that at trial." (Internal quotation marks omitted.) Id. For example, a defendant in a criminal proceeding is entitled to effective assistance of counsel and "has a legitimate interest in the character of the procedure [that] leads to the imposition of [the] sentence . . . ." (Internal quotation marks omitted.) Id. Additionally, "[a]s a matter of due process, information may be considered as a basis for a sentence only if it has some minimal indicium of reliability." (Internal quotation marks omitted.) Id., 571. On the other hand, "the due process clauses of the state and federal constitutions do not in all circumstances require a judge to hold hearings and give a convicted person an opportunity to participate in those hearings when determining the sentence to be imposed." (Internal quotation marks omitted.) Id. Most significantly, in the present context, *"the defendant has no substantive right to a particular sentence within*

fully the parties' arguments and to provide the requisite background for our analysis in part II B of this opinion.

*the range authorized by statute* . . . ." (Emphasis added; internal quotation marks omitted.) Id., 570, quoting *Gardner* v. *Florida,* 430 U.S. 349, 358, 97 S. Ct. 1197, 51 L. Ed. 2d 393 (1977). Thus, there can be no liberty interest implicit in the fourteenth amendment in receiving a sentence within the authorized range that is "proportionate" to that of similarly situated offenders. "As long as the sentencing judge has a reasonable, persuasive basis for relying on the information [that] he uses to fashion his ultimate sentence" within the authorized range, there should be no interference with his discretion.[14] *State* v. *Patterson,* supra, 571. We therefore conclude that this claim has no merit.

B

The plaintiff next claims that the legislature, in enacting the legislation enabling the review division to review sentences; see General Statutes § 51-194 et seq.; thereby created a liberty interest in convicted persons in receiving a sentence that is proportionate to the sentences of similarly situated offenders. A liberty interest "may arise from an expectation or interest created by state laws or policies, see, e.g., *Wolff* v. *McDonnell,* 418 U.S. 539, [556–58, 94 S. Ct. 2963, 41 L. Ed. 2d 935] (1974) (liberty interest in avoiding withdrawal of state-created system of good-time credits)." *Wilkinson* v. *Austin,* supra, 545 U.S. 221. In order to resolve this claim, we must interpret the statutory scheme created by the legislature.

"In construing [a statute], we are mindful of General Statutes § 1-2z, which instructs us that [o]ur fundamen-

---

[14] To the extent that the plaintiff asserts in his brief that he demonstrated to the review division, as a matter of law, that he was sentenced disproportionately, thereby stripping the review division of any discretion *not* to reduce his sentence accordingly, we decline to address his claim. We consider this claim to be nothing more than an attempt to repackage the plaintiff's argument that he is entitled to a particular sentence, an argument that this court previously has rejected. See *State* v. *Patterson,* supra, 236 Conn. 570.

tal objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to determine that [intent and the meaning of a statute] . . . § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Citations omitted; internal quotation marks omitted.) *State* v. *Orr*, 291 Conn. 642, 651–52, 969 A.2d 750 (2009); see *Baker* v. *Commissioner of Correction*, 281 Conn. 241, 253–56, 914 A.2d 1034 (2007) (interpreting parole eligibility statutes to determine whether they confer liberty interest on petitioner).

In accordance with § 1-2z, we begin our analysis with the text of the relevant statute.[15] General Statutes § 51-196 (a) provides: "The review division shall, in each case in which an application for review is filed in accordance with section 51-195, review the judgment so far as it

---

[15] The plaintiff relies on General Statutes §§ 51-194 through 54-197 as the statutory bases for his claimed liberty interest. The relevant section that we must interpret is § 51-196, which concerns the review of sentences by the review division. The remaining sections, which do not require interpretation, are § 51-194, which concerns the appointment of judges to the review division, § 51-195, which discusses the application process for sentence review, and § 51-197, which directs the review division to prescribe application forms to be used in accordance with § 51-195 and to establish rules of procedure under §§ 51-195 and 51-196.

relates to the sentence or commitment imposed, either increasing or decreasing the penalty, and any other sentence imposed on the person at the same time, and may order such different sentence or sentences to be imposed as could have been imposed at the time of the imposition of the sentence under review, or may decide that the sentence or commitment under review should stand."

There is nothing in the text of this statute that requires the review division to compare an applicant's sentence to the sentences of similarly situated offenders. Likewise, the statute contains no language requiring the review division to reduce an applicant's sentence on the basis of any particular criteria or to conduct the type of proportionality review contemplated by the plaintiff. Instead, we conclude that the statute's delegation of power to "order such different sentence or sentences to be imposed as could have been imposed at the time of the imposition of the sentence under review"; General Statutes § 51-196 (a); confers broad discretion on the review division[16] that is comparable to that of the sentencing court. See *Consiglio* v. *Warden*, 153 Conn. 673, 676, 220 A.2d 269 (1966) (describing review division's review process as "limited" de novo appeal of punishment imposed in which "review division, after hearing, may substitute a discretionary decision of its own for a discretionary decision of the trial court"); see also *State* v. *Arthur H.*, 288 Conn. 582, 596, 953 A.2d 630 (2008) ("[i]t is well settled that a sentencing judge has

---

[16] We previously have held that such discretion, although broad, still must be within the bounds of the scope of review contemplated in Practice Book § 43-28. When the review division completely disregards the factors enumerated in § 43-28 in favor of blindly applying its own criteria, such action is an abuse of discretion. See *State* v. *Johnson*, supra, 192 Conn. 477, 479 (holding that review division abused its discretion in reducing sentence when reduction was based solely on "blanket policy rule" instead of individual facts and circumstances of case).

broad discretion in imposing any sentence within the statutory limits" [internal quotation marks omitted]).

Our conclusion is bolstered by the fact that § 51-196 affords the review division access to materials similar to those that the trial court uses in making sentencing decisions. Compare General Statutes § 51-196 (b) ("[i]n reviewing any judgment, the review division . . . may require the production of presentence or precommitment reports and any other records, documents or exhibits connected with such review proceedings"), and General Statutes § 51-196 (c) ("the review division shall permit any victim of the crime to appear . . . for the purpose of making a statement . . . concerning . . . the sentence"), with General Statutes § 54-91a (a) (requiring trial court to consider presentence investigation report prior to sentencing), and General Statutes § 54-91c (b) (permitting victim to make statement concerning, inter alia, "the appropriateness of any penalty" prior to trial court's imposition of sentence). In light of the broad discretion delegated to the review division by § 51-196, we conclude that the legislature, in enacting the statute, did not intend to require the review division to perform the specific type of proportionality review espoused by the plaintiff and, thus, did not intend to confer on convicted persons a liberty interest in sentences that are proportionate to the sentences of similarly situated offenders.

In comparing § 51-196 to other statutes, we note that the similar offender proportionality review advocated by the plaintiff is akin to the proportionality review that formerly was required by General Statutes (Rev. to 1995) § 53a-46b in conjunction with this court's review of a trial court's imposition of the death penalty. Prior to the legislature's elimination of proportionality

review in 1995,[17] General Statutes (Rev. to 1995) § 53a-46b (b) provided: "The supreme court shall affirm the sentence of death unless it determines that . . . (3) the sentence is excessive or disproportionate to the penalty imposed *in similar cases,* considering both the circumstances of the crime and the character and record of the defendant." (Emphasis added.) In light of the prior existence of proportionality review, it is evident that the legislature knew how to create a statute with similar offender proportionality review schemes but chose not to do so in § 51-196. "As we have stated many times, [when] a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed. . . . That tenet of statutory construction is well grounded because [t]he General Assembly is always presumed to know all the existing statutes and the effect that its action or non-action will have [on] any one of them." (Internal quotation marks omitted.) *Asylum Hill Problem Solving Revitalization Assn.* v. *King,* 277 Conn. 238, 256–57, 890 A.2d 522 (2006).[18]

---

[17] The requirement of proportionality review set forth in subdivision (3) of § 53a-46b (b) was repealed on April 12, 1995, by Public Acts 1995, No. 95-16, § 3. We continue, however, to conduct such proportionality review of death sentences in cases in which the capital felony was committed before April 12, 1995. See, e.g, *State* v. *Breton,* 264 Conn. 327, 421–22, 824 A.2d 778, cert. denied, 540 U.S. 1055, 124 S. Ct. 819, 157 L. Ed. 2d 708 (2003).

[18] In this context, the plaintiff's reliance on *State* v. *Webb,* 238 Conn. 389, 680 A.2d 147 (2000), and *State* v. *Cobb,* 251 Conn. 285, 743 A.2d 1 (1999), cert. denied, 531 U.S. 841, 121 S. Ct. 106, 148 L. Ed. 2d 64 (2000), is misplaced. In each of these cases, this court undertook its statutory duty under General Statutes (Rev. to 1989) § 53a-46b to review the imposition of the death penalty. Subdivision (3) of General Statutes (Rev. to 1989) § 53a-46b (b), which subsequently was repealed in 1995; see footnote 17 of this opinion; expressly required proportionality review. Neither § 51-196 nor Practice Book § 43-28 contains any such explicit language. Moreover, pursuant to General Statutes (Rev. to 1989) § 53a-46b (a), this court was given only limited discretion to choose between two sentences in conducting its proportionality review, namely, life imprisonment without the possibility of release

Although § 51-196 contains no language regarding proportionality review, the plaintiff appears to urge that we read such language into the statute on the basis of the legislative history. We decline to do so. In *State* v. *Nardini*, supra, 187 Conn. 118–19, we discussed the origins of the sentence review statutes, which date back to 1957 and were enacted in response to a 1956 uprising at a prison in Wethersfield. In response to the uprising, "Governor [Abraham] Ribicoff appointed a [p]rison [s]tudy [c]ommittee to investigate the reasons for the prisoner unrest and to propose legislation to remedy legitimate prisoner grievances. . . . The study committee found that the major complaint of prisoners was the inequitable distribution of penalties imposed on similar offenders for similar offenses *and the unavailability of a practicable review of excessive sentences.* . . . [T]he study committee recommended a review division of trial court judges patterned after a statute adopted in . . . Massachusetts. . . . In 1957 the legislature adopted a sentence review bill; Public Acts 1957, No. 436 . . . modeled substantially after the recommendations of the [p]rison [s]tudy [c]ommittee." (Citations omitted; emphasis added.) *State* v. *Nardini*, supra, 118–19.

In examining this legislative history, we observed in *Nardini* that "[t]he purpose . . . of the [s]entence [r]eview [statutes was] to afford a convicted person a limited appeal for reconsideration of his sentence. . . . It thus gives him an optional de novo hearing as to the punishment to be imposed. . . . It meets the complaints that gave birth to the [s]entence [r]eview [statutes] by providing a judicial body with discretionary authority to review prison sentences." (Citations omit-

---

or death. In the absence of an explicit proportionality requirement, complete with detailed criteria for assessing sentence proportionality across the infinite range of potential defendants and crimes, we are unwilling to import such a requirement into the sentence review statutes by judicial fiat.

ted.) Id., 121–22. It is therefore clear from *Nardini* that the legislature chose to address complaints regarding the allegedly inequitable distribution of penalties for similar offenses by affording sentence review, not by creating a constitutional right to proportional sentences. Consequently, it would be improper to go beyond the plain language of § 51-196 and to read proportionality language into the statute, as the plaintiff urges.

We are not in the business of writing statutes; that is the province of the legislature. Our role is to "interpret statutes as they are written. . . . [We] cannot, by [judicial] construction, read into statutes provisions [that] are not clearly stated." (Internal quotation marks omitted.) *State* v. *Anderson*, 74 Conn. App. 633, 653, 813 A.2d 1039, cert. denied, 263 Conn. 901, 819 A.2d 837 (2003). "[I]n the absence of ambiguity, we look only to what the legislature actually said, not to what it might have meant to say." (Internal quotation marks omitted.) *Stone-Krete Construction, Inc.* v. *Eder*, 280 Conn. 672, 682–83, 911 A.2d 300 (2006). We conclude that § 51-196 is unambiguous with regard to whether the legislature specifically intended for the review division to conduct similar offender proportionality review. We thus decline to read such a provision into the statute in light of its legislative history.

We also decline to construe § 51-196 to embrace a liberty interest in proportionality review by virtue of well settled law regarding the right to appeal. "The right to an appeal is not a constitutional one. It is but a statutory privilege available to one who strictly complies with the statutes and rules on which the privilege is granted." *Chanosky* v. *City Building Supply Co.*, 152 Conn. 449, 451, 208 A.2d 337 (1965); see also *Palmer* v. *Friendly Ice Cream Corp.*, 285 Conn. 462, 466, 940 A.2d 742 (2006). It follows that, because sentence review constitutes a limited appeal for reconsideration of a convicted person's sentence; *State* v. *Nardini*,

supra, 187 Conn. 121; see General Statutes § 51-196; the statutory right to reconsideration of a sentence should not be construed to include a liberty interest in proportionality review unless expressly provided for in the statute.

Lastly, the plaintiff claims that his liberty interest arises out of Practice Book § 43-28, which sets forth the parameters of the review division's scope of review. Specifically, the plaintiff claims that the text of § 43-28 requires the review division to conduct similar offender proportionality review, and, if it fails to do so, there is a deprivation of liberty when a disproportionate sentence causes a convicted person to remain confined longer than he should be. The state responds that § 43-28 says nothing about proportionality review; rather, the notion of proportionality in § 43-28 refers to the justifiability of the sentence *in a particular case* in light of the factors articulated in the rule.[19] We agree with the state.

Practice Book § 43-28 provides: "The review division shall review the sentence imposed and determine whether the sentence should be modified because it is inappropriate or disproportionate in the light of the nature of the offense, the character of the offender, the protection of the public interest, and the deterrent, rehabilitative, isolative, and denunciatory purposes for which the sentence was intended."

There is nothing in Practice Book § 43-28 that requires the review division to review a sentence by comparing it to the sentences of similarly situated offenders. We conclude that Practice Book § 43-28 requires the review division to determine the appropri-

---

[19] The state also argues that, because Practice Book § 43-28 is a procedural court rule, it cannot create a liberty interest under the due process clause. Because we hold that § 43-28 does not require similar offender proportionality review, we need not consider this argument.

ateness of a sentence in light of the facts and circumstances of the particular case, with specific reference to "the nature of the offense, the character of the offender, the protection of the public interest, and the deterrent, rehabilitative, isolative, and denunciatory purposes for which the sentence was intended." Our interpretation of § 43-28 is consistent with our interpretation of § 51-196, which confers on the review division discretionary authority with respect to sentencing that is similar to that of the sentencing court. Pursuant to General Statutes § 54-91a (c), the trial court, prior to sentencing, must consider factors similar to those set forth in Practice Book § 43-28, namely, "the circumstances of the offense, the attitude of the . . . victim . . . and the criminal record, social history and present condition of the defendant." Neither § 54-91a nor Practice Book § 43-28 requires the trial court or the review division to consider sentences imposed on other offenders.

Although we recognize that it is permissible for the review division, in its broad discretion, to engage in similar offender proportionality review in a particular case[20] the review division is by no means *required* to conduct such review across the board as a matter of law. Moreover, if the review division chooses to conduct similar offender proportionality review, such review

---

[20] We are aware that the review division previously has engaged in such comparative review, particularly in situations involving codefendants, in order to achieve sentencing equity among the codefendants on the basis of their individual culpability and other factors enumerated in Practice Book § 43-28. See P. Samuelson, "Sentence Review and Sentence Disparity: A Case Study of the Connecticut Sentence Review Division," 10 Conn. L. Rev. 5, 54–55, 66–67, 71 (1977). We also note that the review division, at the request of the plaintiff's counsel, considered similar offender sentencing data in the present case. After considering this data and reviewing the record as a whole, the review division determined that the plaintiff's sentence was neither inappropriate nor disproportionate.

can be used only as one factor in the review division's assessment of the sentence because the review division still must consider each of the factors enumerated in Practice Book § 43-28. See *State* v. *Johnson*, supra, 192 Conn. 478–79 (remanding case to review division when it failed to conduct review on basis of factors enumerated in what is now Practice Book § 43-28).

Finally, in comparing Practice Book § 43-28 to other rules of practice, such as Practice Book § 67-6, we are mindful of some key differences. Section 67-6 supplements General Statutes § 53a-46b, the statute governing this court's review of the imposition of a death sentence, and contains the requirements for the content of the parties' briefs in such cases. Specifically, Practice Book § 67-6 (a) (3) requires the parties to brief the issue of whether "the sentence is excessive or disproportionate to the penalty imposed in *similar cases* . . . ." (Emphasis added.) It is evident that the drafters of the rules of practice knew how to create rules that contemplate similar offender proportionality review schemes but chose not to do so in drafting § 43-28. This is strong evidence that the drafters did not intend to *require* the review division to conduct similar offender proportionality review. See, e.g., *Asylum Hill Problem Solving Revitalization Assn.* v. *King*, supra, 277 Conn. 256–57. Accordingly, because § 43-28 does not require the review division to conduct similar offender proportionality review, it does not create a liberty interest in a prison sentence that is proportionate to the sentences of similarly situated offenders. Our resolution of this issue disposes of the plaintiff's claim that he was denied procedural due process.

The writ of error is dismissed.

In this opinion the other justices concurred.