******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JAN G. *v.* SCOTT SEMPLE ET AL.*
(AC 43794)

Bright, C. J., and Alvord and Oliver, Js.

*Syllabus*

The self-represented, incarcerated plaintiff sought declaratory and injunctive
relief as well as monetary damages against the defendants, state correc-
tional employees, claiming state tort claims and violations of his federal
constitutional rights. Following the trial court's termination of a protec-
tive order barring the plaintiff's contact with his mother, M, a victim of
a crime he had committed, the plaintiff and M submitted various requests
to the Department of Correction to approve contact visits between them
while the plaintiff is incarcerated, which were denied. The plaintiff then
submitted two inmate grievance forms, which were also denied. The
plaintiff commenced this action against the defendants in both their
individual and official capacities. The trial court granted the defendants'
motion to dismiss, concluding that the plaintiff's claims against them
in their individual capacities were barred by statutory (§ 4-165) immunity
and the claims against them in their official capacities were barred by
sovereign immunity. On the plaintiff's appeal to this court, *held*:

1. The trial court did not improperly conclude that it lacked subject matter
   and personal jurisdiction over the plaintiff's claims brought against the
   defendants in their individual capacities:
   a. The trial court did not improperly conclude that the defendants were
   entitled to statutory immunity pursuant to § 4-165 (a) to the extent that
   the plaintiff alleged state tort claims; in his complaint, the plaintiff merely
   alleged that the defendants had denied his requests for contact visitation
   with M during his incarceration in the discharge of their duties pursuant
   to a certain Department of Correction administrative directive, and did
   not allege that the defendants denied his requests in a wanton, reckless,
   or malicious manner; accordingly, the court lacked subject matter juris-
   diction.
   b. The trial court properly dismissed the plaintiff's federal civil rights
   claims brought pursuant to the applicable federal statute (42 U.S.C.
   § 1983) against the defendants in their individual capacities on the alter-
   native basis of qualified immunity, as the plaintiff failed to plead facts
   showing that the defendants violated a statutory or constitutional right:
   the plaintiff failed to allege any incursion upon a constitutionally pro-
   tected liberty interest, as an inmate does not have a liberty interest in
   access to visitors, and, thus, the plaintiff failed to allege a violation of
   his due process rights as guaranteed by the fourteenth amendment to
   the United States constitution; moreover, the plaintiff failed to allege a
   violation of his right to freedom of association as guaranteed by the
   first amendment to the United States constitution because preventing
   or limiting contact visits between inmates and the victims of their crimes,
   even when such victims are immediate family members, bears a rational
   relation to legitimate penological interests; accordingly, the court lacked
   subject matter jurisdiction.
   c. The trial court properly dismissed the plaintiff's claims brought against
   the defendants in their individual capacities on the alternative basis of
   lack of personal jurisdiction, as the plaintiff only effected service on
   the defendants in their official capacities; by serving each defendant at
   the Office of the Attorney General and not at their usual places of abode,
   as required by statute (§ 52-57 (a)), the defendants were not served
   properly in their individual capacities.
2. The trial court properly dismissed the plaintiff's claims brought against
   the defendants in their official capacities for lack of subject matter
   jurisdiction, as the claims were barred by the doctrine of sovereign
   immunity: the plaintiff's claims for monetary damages were barred
   because the plaintiff failed to allege in his complaint that the state
   had waived sovereign immunity or that the claims commissioner had
   authorized the plaintiff's claims; moreover, the plaintiff's claims for
   declaratory and injunctive relief brought pursuant to 42 U.S.C. § 1983
   were barred because the plaintiff failed to plead facts showing that the

defendants violated a statutory or constitutional right.

Argued October 15, 2020—officially released January 12, 2021

*Procedural History*

Action to recover damages for, inter alia, the alleged deprivation of the plaintiff's federal constitutional rights, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the court, *Abrams, J.*, granted the defendants' motion to dismiss and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*Jan G.*, self-represented, the appellant (plaintiff).

*Jacob McChesney*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, and *Clare E. Kindall*, solicitor general, for the appellees (defendants).

*Opinion*

ALVORD, J. The self-represented plaintiff, Jan G., appeals from the judgment of the trial court dismissing his action against the defendants, state employees of the Department of Correction (department).[1] On appeal, the plaintiff claims that the court improperly concluded that it lacked subject matter jurisdiction over (1) his claims against the defendants in their individual capacities on the basis of statutory immunity pursuant to General Statutes § 4-165, and (2) his claims against the defendants in their official capacities on the basis of the doctrine of sovereign immunity.[2] We affirm the judgment of the trial court.

The following facts are alleged in the plaintiff's complaint. At all times relevant to this appeal, the plaintiff has been incarcerated at the Cheshire Correctional Institution (Cheshire). Prior to 2015, the court issued a protective order barring the plaintiff's contact with his mother. In February, 2015, the court terminated the protective order against the plaintiff. Following the court's termination of the protective order, the plaintiff and his mother submitted to the department various requests to approve contact visits between them while the plaintiff is incarcerated. The defendant Scott Erfe, then the warden of Cheshire, denied the plaintiff's and his mother's requests.

In response to Erfe's denial of the contact visitation requests, the plaintiff submitted to the department two inmate grievance forms—a May 9, 2018 inmate administrative remedy form (level one grievance), and a June 22, 2018 inmate grievance appeal form (level two grievance). The plaintiff attached as exhibits to his complaint, inter alia, his level one grievance, his level two grievance, and the department's responses to each. In those grievance forms, the plaintiff again requested that the department add his mother to his contact visitation list, and he referenced the court's termination of the protective order against him. On June 21, 2018, the department denied the plaintiff's level one grievance, stating: "Per Administrative Directive 10.6 [§ 5 (e) (iii), a] visit between an inmate and the inmate's victim shall not be permitted unless approved in writing by the [u]nit [a]dministrator. Your grievance is denied."[3] On August 1, 2018, the department denied the plaintiff's level two grievance, stating: "You are appealing a level one grievance regarding visiting at [the] Cheshire [Correctional Institution]. The response given by [the department] was appropriate. The removal of the protective order does not negate the fact that [your mother] is a victim of your crime. Your level [two] grievance appeal is denied."[4]

On January 2, 2019, the plaintiff commenced this action against the defendants in both their individual and official capacities. In his complaint, the plaintiff

alleged federal civil rights claims pursuant to 42 U.S.C. § 1983.[5] Specifically, the plaintiff alleged that the defendants, by denying requests for contact visitation with his mother, violated his right to freedom of association and his right to due process of law as guaranteed by the first and the fourteenth amendments to the United States constitution.[6] Additionally, in an "[i]ntroduction" to his complaint, the plaintiff alleged "the torts of denial of visits of elderly infirm (80 year old) mother" and "denial of freedom of association."[7] The plaintiff sought declaratory and injunctive relief, as well as monetary damages.

On February 25, 2019, the defendants moved to dismiss the plaintiff's action. With respect to the plaintiff's claims brought against them in their individual capacities, the defendants provided three bases for dismissing the plaintiff's claims. The defendants first argued that the court lacked personal jurisdiction over them in their individual capacities due to the plaintiff's failure to serve them in that capacity, as required by General Statues § 52-57 (a).[8] Second, the defendants argued that the court lacked subject matter jurisdiction over the plaintiff's claims brought against them in their individual capacities as they are entitled to statutory immunity pursuant to § 4-165.[9] Third, the defendants argued that they additionally are entitled to qualified immunity, barring the plaintiff's § 1983 claims brought against them in their individual capacities. With respect to the plaintiff's claims brought against the defendants in their official capacities, the defendants argued that those claims are barred by sovereign immunity.

On April 1, 2019, the plaintiff filed an objection to the defendants' motion to dismiss in which he argued that "statutory and sovereign immunity does not apply in a § 1983 federal civil rights action filed in state court" because "[t]he supremacy clause preempts state statutes and state common law of Connecticut." The plaintiff further argued that the defendants are "not entitled to any qualified immunity."[10]

On August 20, 2019, the trial court granted the defendants' motion to dismiss, concluding that the plaintiff's claims against the defendants in their individual capacities are barred by statutory immunity pursuant to § 4-165, and that his claims against the defendants in their official capacities are barred by sovereign immunity.[11] This appeal followed.

We begin by setting forth our standard of review. "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . .

"Claims involving the doctrines of common-law sov-

ereign immunity and statutory immunity, pursuant to § 4-165, implicate the court's subject matter jurisdiction. . . . A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. . . .

"When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Citations omitted; internal quotation marks omitted.) *Lawrence* v. *Weiner*, 154 Conn. App. 592, 596–97, 106 A.3d 963, cert. denied, 315 Conn. 925, 109 A.3d 921 (2015).

I

On appeal, the plaintiff first claims that the trial court improperly concluded that it lacked subject matter jurisdiction over his claims brought against the defendants in their individual capacities on the basis of statutory immunity pursuant to § 4-165 (a). The defendants contend that the court properly dismissed the plaintiff's state tort claims brought against them in their individual capacities on the basis of statutory immunity pursuant to § 4-165 (a). The defendants concede, however, that there was "apparent error in [the court's] overbroad application of . . . § 4-165" to the plaintiff's § 1983 claims brought against them in their individual capacities.[12] Consistent with the defendants' arguments set forth in their memorandum of law in support of their motion to dismiss, the defendants provide two alternative bases for affirming the court's dismissal of the plaintiff's § 1983 claims brought against them in their individual capacities: that the court lacked subject matter jurisdiction over the plaintiff's claims on the basis of the doctrine of qualified immunity, and that the court lacked personal jurisdiction over the defendants in their individual capacities.

We agree with the defendants that (A) the court lacked subject matter jurisdiction over the plaintiff's state tort claims brought against them in their individual capacities on the basis of statutory immunity pursuant to § 4-165 (a), and (B) the court lacked subject matter jurisdiction over the plaintiff's § 1983 claims brought against them in their individual capacities on the basis of the doctrine of qualified immunity. Furthermore, we agree with the defendants that (C) the court lacked personal jurisdiction over them in their individual capacities. Accordingly, we conclude that the court properly dismissed the plaintiff's claims brought against the defendants in their individual capacities.

## A

We first address the plaintiff's claim that the court improperly concluded that the defendants are entitled to statutory immunity pursuant to § 4-165 (a). The defendants contend that, to the extent that the plaintiff alleged state tort claims, the court properly dismissed such claims brought against them in their individual capacities on the basis of statutory immunity. We agree with the defendants.

Section 4-165 (a) provides in relevant part: "No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment. . . ." Section 4-165 "grants state employees immunity from suit from negligence claims regarding conduct arising out of the scope of their employment, but such immunity does not extend to conduct by a state employee that is alleged to be wanton, reckless, or malicious." *Lawrence* v. *Weiner*, supra, 154 Conn. App. 594.

"In the posture of this case, we examine the pleadings to decide if the plaintiff has alleged sufficient facts . . . with respect to personal immunity under § 4-165, to support a conclusion that the [defendant was] acting outside the scope of [his] employment or wilfully or maliciously. . . . The question before us, therefore, is whether the facts as alleged in the pleadings, viewed in the light most favorable to the plaintiff, are sufficient to survive a motion to dismiss on the ground of statutory immunity. . . .

"We thus turn to the matter of whether the plaintiff has alleged facts that, if proven, are sufficient to demonstrate that the defendant acted wantonly, recklessly, or maliciously.[13] In applying § 4-165, our Supreme Court has understood wanton, reckless or malicious to have the same meaning as it does in the common-law context. . . . Under the common law, [i]n order to establish that the defendants' conduct was wanton, reckless, wilful, intentional and malicious, the plaintiff must prove, on the part of the defendants, the existence of a state of consciousness with reference to the consequences of one's acts . . . . [Such conduct] is more than negligence, more than gross negligence. . . . [I]n order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them. . . . It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action. . . . [In sum, such] conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." (Citation omitted; footnote added; internal quotation marks omitted.)

Id., 598.

In his complaint, the plaintiff merely has alleged that the defendants had denied his requests for contact visitation with his mother during his incarceration. The plaintiff has not alleged that the defendants denied his requests in a wanton, reckless, or malicious manner. Rather, in his complaint, the plaintiff indicated that the defendants denied his requests in the discharge of their duties pursuant to Administrative Directive 10.6. Accordingly, we conclude that the defendants are entitled to statutory immunity pursuant to § 4-165 (a). The court, therefore, lacked subject matter jurisdiction over the plaintiff's state tort claims brought against the defendants in their individual capacities, and the court properly dismissed such claims.

B

We next address the defendants' argument for affirming the court's dismissal of the plaintiff's § 1983 claims brought against them in their individual capacities on the alternative basis of the doctrine of qualified immunity. The plaintiff contends that the defendants are not entitled to qualified immunity. We agree with the defendants.

The following well established legal principles guide our analysis. "[A] claim for qualified immunity from liability for damages under § 1983 raises a question of federal law . . . and not state law. Therefore, in reviewing these claims of qualified immunity we are bound by federal precedent, and may not expand or contract the contours of the immunity available to government officials." (Citation omitted; internal quotation marks omitted.) *Schnabel* v. *Tyler*, 230 Conn. 735, 742–43, 646 A.2d 152 (1994).

"Under federal law, the doctrine of qualified immunity shields officials from civil damages liability for their discretionary actions as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. *Anderson* v. *Creighton*, 483 U.S. 635, 638, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). Qualified immunity is an immunity from suit rather than a mere defense to liability and, therefore, protects officials from the burdens of litigation for the choices that they make in the course of their duties. . . . *Mitchell* v. *Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985). Thus, the United States Supreme Court has recognized qualified immunity for government officials [when] it [is] necessary to preserve their ability to serve the public good or to ensure that talented candidates [are] not deterred by the threat of damages suits from entering public service. *Wyatt* v. *Cole*, 504 U.S. 158, 167, 112 S. Ct. 1827, 118 L. Ed. 2d 504 (1992). Whether an official is entitled to qualified immunity presents a question of law that must be resolved de novo on appeal. *Elder* v. *Holloway*, 510

U.S. 510, 516, 114 S. Ct. 1019, 127 L. Ed. 2d 344 (1994)." (Internal quotation marks omitted.) *Brooks* v. *Sweeney*, 299 Conn. 196, 216, 9 A.3d 347 (2010).

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct. . . . *Ashcroft* v. *al-Kidd*, 563 U.S. 731, 735, 131 S. Ct. 2074, 79 L. Ed. 2d 1149 (2011) . . . . If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." (Citation omitted; internal quotation marks omitted.) *Braham* v. *Newbould*, 160 Conn. App. 294, 302, 124 A.3d 977 (2015).

The plaintiff has alleged two constitutional bases for his § 1983 claims: that the defendant's denial of his requests for contact visitation with his mother during his incarceration violated his right to freedom of association under the first amendment to the United States constitution and his right to due process of law under the fourteenth amendment to the United States constitution.

We begin with the plaintiff's due process claim pursuant to the fourteen amendment to the United States constitution, which provides in relevant part that "[n]o State shall . . . deprive any person of life, liberty or property, without due process of law . . . ." U.S. Const., amend. XIV, § 1. In the present case, the interest at stake is the plaintiff's liberty interest. " 'There are two elements [that] must be established in order to find a due process violation. First, because not every liberty interest is protected, [the plaintiff] must establish that he has a liberty interest that comes within the ambit of the fourteenth amendment. *Hewitt* v. *Helms*, 459 U.S. 460, 466, 103 S. Ct. 864, 74 L. Ed. 2d 675 (1983); *Meachum* v. *Fano*, [427 U.S. 215, 223–24, 96 S. Ct. 2532, 49 L. Ed. 2d 451] (1976); *Board of Regents* v. *Roth*, 408 U.S. 564, 571, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972); *Society for Savings* v. *Chestnut Estates, Inc.*, 176 Conn. 563, 571, 409 A.2d 1020 (1979). If it is determined that a protected liberty is implicated, then the second element that must be addressed is what procedural protections are due. *Goss* v. *Lopez*, 419 U.S. 565, 577, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975); *Board of Regents* v. *Roth*, supra, 569–70; *Morrissey* v. *Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972); see *Williams* v. *Bartlett*, 189 Conn. 471, 477, 457 A.2d 290 (1983). . . .

" 'Due process analysis begins with the identification of the interests at stake. Liberty interests protected by the [f]ourteenth [a]mendment may arise from two sources—the [d]ue [p]rocess [c]lause itself and the laws of the [s]tates.' . . . *State* v. *Patterson*, 236 Conn. 561, 568–69, 674 A.2d 416 (1996)." *State* v. *Rupar*, 293 Conn. 489, 502–503, 978 A.2d 502 (2009). Accordingly, we must

consider whether, under the fourteenth amendment or under the laws of this state, the plaintiff has a constitutionally protected liberty interest in access to contact visits with his mother during his incarceration.

An inmate "does not have a liberty interest in access to visitors." *Henderson* v. *Commissioner of Correction*, 66 Conn. App. 868, 869, 786 A.2d 450 (2001); see also *Kentucky Dept. of Corrections* v. *Thompson*, 490 U.S. 454, 461, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989) ("denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence . . . and therefore is not independently protected by the [d]ue [p]rocess [c]lause" (citation omitted; internal quotation marks omitted)); *Santiago* v. *Commissioner of Correction*, 39 Conn. App. 674, 680, 667 A.2d 304 (1995) ("inmates have no protected liberty interest in access to visitors"). Moreover, the "[D]epartment of [C]orrection Administrative Directive § 10.6 provides in relevant part that 'visitation shall be considered a privilege and no inmate shall have entitlement to a [social] visit.' " *Henderson* v. *Commissioner of Correction*, supra, 869; see Department of Correction, Administrative Directive 10.6 § 4 (b) (effective November 6, 2020). The plaintiff fails to allege in his complaint any incursion upon a constitutionally protected liberty interest and, accordingly, we conclude that the plaintiff has failed to allege a violation of his due process rights as guaranteed by the fourteenth amendment to the United States constitution.

We next turn to the plaintiff's allegation that the defendants violated his freedom of association as guaranteed by the first amendment to the United States constitution. "The fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the [f]irst [a]mendment, which are implicit in incarceration. . . . [A] prison inmate retains those [f]irst [a]mendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Thus, challenges to prison restrictions that are asserted to inhibit [f]irst [a]mendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law.

"Perhaps the most obvious of the [f]irst [a]mendment rights that are necessarily curtailed by confinement are those associational rights that the [f]irst [a]mendment protects outside of prison walls. The concept of incarceration itself entails a restriction on the freedom of inmates to associate with those outside of the penal institution. Equally as obvious, the inmate's 'status as a prisoner' and the operational realities of a prison dictate restrictions on the associational rights among inmates." *Jones* v. *North Carolina Prisoners' Labor*

*Union, Inc.*, 433 U.S. 119, 125–26, 97 S. Ct. 2532, 53 L. Ed. 2d 629 (1977).

The United States Supreme Court has explained that "the [c]onstitution protects certain kinds of highly personal relationships . . . . And outside the prison context, there is some discussion . . . of a right to maintain certain familial relationships, including association among members of an immediate family and association between grandchildren and grandparents. . . . Some curtailment of that freedom must be expected in the prison context." (Citations omitted; internal quotation marks omitted.) *Overton* v. *Bazzetta*, 539 U.S. 126, 131, 123 S. Ct. 2162, 156 L. Ed. 2d 162 (2003).

To the extent that a prison regulation curtails an inmate's freedom of association, an inmate's constitutional right is not violated if the regulation "bear[s] a rational relation to legitimate penological interests." Id., 132. In determining whether the prison regulation bears a rational relation to legitimate penological interests, "[w]e must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." Id.

It is apparent from the plaintiff's complaint that the department denied the plaintiff's requests for contact visits with his mother during his incarceration because the department determined that the plaintiff's mother was the victim of a crime that he had committed. The department denied the plaintiff's requests pursuant to its Administrative Directive 10.6 § 5 (e) (iii), which provides in relevant part: "A visit between an inmate and the inmate's victim shall not be permitted unless approved in writing by the [u]nit [a]dministrator or [d]irector of [p]arole and [c]ommunity [s]ervices or designee. . . ." Evaluating the department's regulation in the light of safeguarding institutional security, a central objective of prison administration; see *Bell* v. *Wolfish*, 441 U.S. 520, 547, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979); we conclude that preventing or limiting contact visits between inmates and the victims of their crimes, even when such victims are immediate family members, bears a rational relation to legitimate penological interests.[14] Accordingly, we conclude that the plaintiff has failed to allege a violation of his right to freedom of association as guaranteed by the first amendment to the United States constitution.

In light of our determinations that the plaintiff fails to allege a violation of his right to freedom of association or his right to due process of law as guaranteed by the first and fourteenth amendments to the United States constitution, we further conclude that the plaintiff has failed to plead facts showing that the defendants violated a statutory or constitutional right. Therefore, the plaintiff's § 1983 claims asserted against the defen-

dants in their individual capacities are barred on the basis of qualified immunity, and the trial court properly dismissed such claims for lack of subject matter jurisdiction. See *Braham* v. *Newbould*, supra, 160 Conn. App. 306–307 (affirming dismissal of § 1983 claims on basis of qualified immunity).

### C

We next address the defendants' argument for affirming the court's dismissal of the plaintiff's claims brought against them in their individual capacities on the alternative basis that the court lacked personal jurisdiction over them in their individual capacities. Specifically, the defendants assert that the plaintiff only effected service on them in their official capacities by serving each defendant at the Connecticut Office of the Attorney General on January 2, 2019. The defendants argue that because the plaintiff failed to effect proper service against them personally or at their usual place of abode as required by § 52-57 (a), the court lacked personal jurisdiction over them in their individual capacities. The plaintiff declined to address this argument in his objection to the defendants' motion to dismiss and in his briefing before this court. We agree with the defendants.

Practice Book § 10-30 (b) provides that "[a]ny defendant, wishing to contest the court's jurisdiction, shall do so by filing a motion to dismiss within thirty days of the filing of an appearance." Practice Book § 10-30 (a) (2) provides in relevant part that "[a] motion to dismiss shall be used to assert . . . lack of jurisdiction over the person . . . ." In this case, the defendants properly contested the court's personal jurisdiction over them in their individual capacities.[15]

"[T]he Superior Court . . . may exercise jurisdiction over a person only if that person has been properly served with process, has consented to the jurisdiction of the court or has waived any objection to the court's exercise of personal jurisdiction. . . . [S]ervice of process on a party in accordance with the statutory requirements is a prerequisite to a court's exercise of [personal] jurisdiction over that party." (Internal quotation marks omitted.) *Sosa* v. *Commissioner of Correction*, 175 Conn. App. 831, 837, 169 A.3d 341 (2017).

To serve a defendant properly in his or her individual capacity, service of process must be made in accordance with § 52-57 (a). Section 52-57 (a) provides that "[e]xcept as otherwise provided, process in any civil action shall be served by leaving a true and attested copy of it, including the declaration or complaint, with the defendant, or at his usual place of abode, in this state." By contrast, where a plaintiff commences a civil action against "the state or against any institution, board, commission, department or administrative tribunal thereof, or against any officer, servant, agent or

employee of the state or of any such institution, board, commission, department or administrative tribunal" in their official capacity, service of process "may be made by a proper officer . . . [on] the Attorney General at the office of the Attorney General in Hartford . . . ." General Statutes § 52-64 (a).

"Pursuant to . . . § 52-57 (a), a defendant in any civil action must be served in hand or at his usual place of abode. This requirement includes civil suits brought against state defendants who are sued in their individual capacities. . . . Thus, a plaintiff who serves a state defendant pursuant to . . . § 52-64 (a) by leaving a copy of the process at the Office of the Attorney General has properly served the defendant only in his or her official capacity and has failed to properly serve the defendant in his or her individual capacity." (Citation omitted; footnotes omitted.) *Sosa* v. *Commissioner of Correction*, supra, 175 Conn. App. 837–38.

Here, the plaintiff served the defendants at the Office of the Attorney General and not at their usual places of abode. The defendants, therefore, were not served properly in their individual capacities. Accordingly, we conclude that the court lacked personal jurisdiction over the defendants in their individual capacities and that the court properly dismissed the plaintiff's claims against them in their individual capacities. See id., 838; *Harnage* v. *Lightner*, 163 Conn. App. 337, 347, 137 A.3d 10 (2016), aff'd in part, 328 Conn. 248, 179 A.3d 212 (2018).

II

The plaintiff next claims that the trial court improperly concluded that it lacked subject matter jurisdiction over his claims brought against the defendants in their official capacities on the basis of the doctrine of sovereign immunity. The defendants contend that the court properly determined that the plaintiff's claims brought against them in their official capacities, both for injunctive and declaratory relief as well as for monetary damages, are barred by the doctrine of sovereign immunity. We agree with the defendants.

"It is well established that [t]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss." (Internal quotation marks omitted.) *Machado* v. *Taylor*, 326 Conn. 396, 403, 163 A.3d 558 (2017). "The principle that the state cannot be sued without its consent, or sovereign immunity, is well established under our case law. . . . It has deep roots in this state and our legal system in general, finding its origin in ancient common law. . . . Not only have we recognized the state's immunity as an entity, but [w]e have also recognized that because the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in

effect, against the state." (Internal quotation marks omitted.) *Allen* v. *Commissioner of Revenue Services*, 324 Conn. 292, 298–99, 152 A.3d 488 (2016), cert. denied,    U.S.   , 137 S. Ct. 2217, 198 L. Ed. 2d 659 (2017). "Exceptions to this doctrine are few and narrowly construed under our jurisprudence." (Internal quotation marks omitted.) *Columbia Air Services, Inc.* v. *Dept. of Transportation*, 293 Conn. 342, 349, 977 A.2d 636 (2009).

"[T]he sovereign immunity enjoyed by the state is not absolute. There are [three] exceptions: (1) when the legislature, either expressly or by force of a necessary implication, statutorily waives the state's sovereign immunity . . . (2) when an action seeks declaratory or injunctive relief on the basis of a substantial claim that the state or one of its officers has violated the plaintiff's constitutional rights . . . and (3) when an action seeks declaratory or injunctive relief on the basis of a substantial allegation of wrongful conduct to promote an illegal purpose in excess of the officer's statutory authority. . . . In the absence of a proper factual basis in the complaint to support the applicability of these exceptions, the granting of a motion to dismiss on sovereign immunity grounds is proper." (Citations omitted; internal quotation marks omitted.) Id., 349–50. For the purposes of this appeal, only the first and the second exceptions to the state's sovereign immunity are relevant.[16]

The first exception to the state's sovereign immunity is relevant to the plaintiff's claims for monetary damages brought against the defendants in their official capacities. "In the absence of a statutory waiver of sovereign immunity, the plaintiff may not bring an action against the state for monetary damages without authorization from the claims commissioner to do so." Id., 351; see also *Miller* v. *Egan*, 265 Conn. 301, 315–16, 828 A.2d 549 (2003) (plaintiffs seeking monetary damages for constitutional violations required to seek waiver from claims commissioner). "When a plaintiff brings an action for money damages against the state, he must proceed through the [O]ffice of the [C]laims [C]ommissioner pursuant to chapter 53 of the General Statutes, §§ 4-141 through 4-165. Otherwise, the action must be dismissed for lack of subject matter jurisdiction under the doctrine of sovereign immunity." *Prigge* v. *Ragaglia*, 265 Conn. 338, 349, 828 A.2d 542 (2003). "This is true even where, as here, claims are brought pursuant to the United States constitution." *Tuchman* v. *State*, 89 Conn. App. 745, 752, 878 A.2d 384, cert. denied, 275 Conn. 920, 883 A.2d 1252 (2005); see also *Prigge* v. *Ragaglia*, supra, 349 (dismissing claims seeking damages brought under first and fourteenth amendments to United States constitution where permission not received from claims commissioner). "In each action authorized by the Claims Commissioner . . . the claimant shall allege such authorization and the date

on which it was granted . . . ." General Statutes § 4-160 (c).

In the present action, the plaintiff fails to allege in his complaint that the state had waived sovereign immunity or that the claims commissioner had authorized the plaintiff's claims. Accordingly, we conclude that the plaintiff has failed to meet the first exception to the state's sovereign immunity and that his claims for monetary damages brought against the defendants in their official capacities are barred.

The second exception to the state's sovereign immunity is relevant to the plaintiff's claims for declaratory and injunctive relief brought against the defendants in their official capacities. "For a claim made pursuant to the second exception, complaining of unconstitutional acts, we require that [t]he allegations of such a complaint and the factual underpinnings if placed in issue, must clearly demonstrate an incursion upon constitutionally protected interests." (Internal quotation marks omitted.) *Columbia Air Services, Inc.* v. *Dept. of Transportation*, supra, 293 Conn. 350.

In part I B of this opinion, we concluded that the plaintiff has failed to plead facts showing that the defendants violated a statutory or constitutional right. For those foregoing reasons, we conclude that the allegations in the plaintiff's complaint fail to clearly demonstrate an incursion upon constitutionally protected interests and, therefore, that the plaintiff has failed to meet the second exception to the state's sovereign immunity. Accordingly, the plaintiff's § 1983 claims for declaratory and injunctive relief brought against the defendants in their official capacities are barred.

We conclude that the court properly dismissed the plaintiff's claims brought against the defendants in their official capacities for lack of subject matter jurisdiction.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018); we decline to identify any party protected or sought to be protected under a protective order or a restraining order that was issued or applied for, or others through whom that party's identity may be ascertained.

[1] The defendants, at all times relevant, were employees of the department. The employees of the department named as defendants are Scott Semple, former Commissioner of Correction, Scott Erfe, former warden of the Cheshire Correctional Institution, and Angel Quiros, former district administrator.

[2] Throughout his complaint, the plaintiff alleged claims on behalf of his mother. In the defendants' memorandum of law in support of their motion to dismiss, the defendants argued that the plaintiff lacked standing to raise claims on behalf of his mother. In its memorandum of decision dismissing the complaint, the court agreed with the defendants that it was "without jurisdiction over any claims the plaintiff [was] making on behalf of his mother." On appeal, the plaintiff claims that the trial court improperly determined that it lacked jurisdiction over the claims that the plaintiff raised on behalf of his mother. In support of his argument, the plaintiff maintains that his mother is "infirm and speak[s] little English . . . ." We conclude that the trial court properly determined that the plaintiff lacked standing to raise such claims on behalf of his mother. See *State* v. *Iban C.*, 275 Conn. 624, 665, 881 A.2d 1005 (2005) ("[u]nder long established principles, a party

is precluded from asserting the constitutional rights of another" (internal quotation marks omitted)); *Frillici* v. *Westport*, 264 Conn. 266, 281, 823 A.2d 1172 (2003) ("[i]t is axiomatic that a party does not have standing to raise the rights of another"); see also *Collins* v. *West Hartford Police Dept.*, 324 Fed. Appx. 137, 139 (2d Cir. 2009) (affirming dismissal of 42 U.S.C. § 1983 claims because plaintiff lacked "standing to challenge constitutional deprivations alleged to have been experienced by his mother").

In his principal appellant brief, the plaintiff also vaguely references undefined freedom of religion and freedom of speech violations. The plaintiff did not allege such constitutional violations in his complaint. We, therefore, do not consider these references.

[3] Department of Correction, Administrative Directive 10.6 § 5 (e) (iii) (effective October 23, 2013) provides in relevant part: "A visit between an inmate and the inmate's victim shall not be permitted unless approved in writing by the [u]nit [a]dministrator or [d]irector of [p]arole and [c]ommunity [s]ervices or designee. . . ."

[4] In the department's response to the plaintiff's level two grievance, the department indicated that the plaintiff had "exhausted the [d]epartment's [a]dministrative [r]emedies," and that an "[a]ppeal to [l]evel [three] will not be answered."

[5] Title 42 of the United States Code, § 1983, provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. . . ."

"Section 1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of a right, privilege or immunity secured by the [c]onstitution or the laws of the United States. . . . Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." (Citations omitted.) *Sykes* v. *James*, 13 F.3d 515, 519 (2d Cir. 1993), cert. denied, 512 U.S. 1240, 114 S. Ct. 2749, 129 L. Ed. 2d 867 (1994).

[6] In a section of his complaint titled "[i]ntroduction," the plaintiff alleged that the defendants were in "violation of [the first] amendment of the United States constitution of freedom of association of families, children, relatives, [etc.], and in violation of the due process clause of the fourteenth amendment of the United States constitution." Despite apparent references in the introduction of his complaint to two constitutional violations, the plaintiff's complaint contained only one cause of action for "Violation of the Due Process." This claim, however, appeared to have incorporated a freedom of association claim by reference to being denied such rights "without due process of law."

[7] In his complaint, the plaintiff subsequently noted that the "tort" referenced by the plaintiff in the introduction of his complaint was actually a "tort action of civil rights under 42 U.S.C. § 1983, under the law within the state of Connecticut."

[8] General Statues § 52-57 (a) provides: "Except as otherwise provided, process in any civil action shall be served by leaving a true and attested copy of it, including the declaration or complaint, with the defendant, or at his usual place of abode, in this state."

[9] General Statutes § 4-165 (a) provides in relevant part: "No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment. . . ."

[10] The plaintiff's objection to the defendants' motion to dismiss failed to address the defendants' argument that the court lacked personal jurisdiction over them in their individual capacities.

[11] The court did not reach the defendants' alternative arguments that the court lacked personal jurisdiction over them in their individual capacities or that, with respect the plaintiff's § 1983 claims against the defendants in their individual capacities, the defendants are entitled to qualified immunity.

[12] Although "[s]tate courts have concurrent jurisdiction over claims brought under § 1983 . . . [c]onduct by persons acting under color of state law which is wrongful under . . . § 1983 . . . cannot be immunized by

state law." (Citations omitted; internal quotation marks omitted.) *Sullins* v. *Rodriguez*, 281 Conn. 128, 133–34, 913 A.2d 415 (2007). Accordingly, we conclude that the court erred in determining that it lacked subject matter jurisdiction over the plaintiff's § 1983 claims brought against the defendants in their individual capacities on the basis of statutory immunity pursuant to § 4-165 (a).

[13] It is undisputed that the defendants were acting in the scope of their employment when they undertook the actions that form the basis of the plaintiff's complaint.

[14] We note that the plaintiff has alleged in his complaint only that the defendants denied the plaintiff contact visits with his mother. The plaintiff has not alleged that the defendants denied the plaintiff alternative means of associating with his mother. Courts addressing the constitutionality of prison policies that are alleged to curtail a prisoner's freedom of association consider "whether alternative means are open to inmates to exercise the asserted right . . . ." *Overton* v. *Bazzetta*, supra, 539 U.S. 132; see also *Pell* v. *Procunier*, 417 U.S. 817, 823, 94 S. Ct. 2800, 41 L. Ed. 2d 495 (1974) (regulations must be "viewed in . . . light of the alternative means of communication permitted under the regulations with persons outside the prison"). "We need not attempt to explore or define the asserted right of association at any length or determine the extent to which it survives incarceration because the challenged [regulation] bear[s] a rational relation to legitimate penological interests." *Overton* v. *Bazzetta*, supra, 131–32.

[15] The defendants filed their initial appearance on January 29, 2019, and their motion to dismiss and memorandum of law in support of their motion to dismiss on February 25, 2019, within thirty days of the filing of their appearance.

[16] The plaintiff's complaint lacks any allegations that the defendants perpetuated wrongful conduct to promote an illegal purpose in excess of their statutory authority.

_____